836 So.2d 489 (2002)
Rosella HEBERT, et al.
v.
CHATEAU LIVING CENTER, L.L.C., et al.
No. 02-CA-462.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
*490 Brett M. Dupuy, Metairie, LA, for Plaintiffs/Appellants.
James E. Wright, Amy M. Winters, Conrad Meyer, New Orleans, LA, for Defendants/Appellees.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
SOL GOTHARD, Judge.
Plaintiffs appeal a decision of the trial court that maintained an exception of prematurity for failure to first present their claim to a medical review panel pursuant to the Medical Malpractice Act, LSA-R.S. 40:1299.41, et seq. For reasons that follow, we reverse.
The only issue for our review in this appeal is whether a plaintiff, who has stated a cause of action under the Nursing Home Residents' Bill of Rights Act embodied in LSA-R.S. 40:2010.8, et seq. (NHRBR), must first present the claim to a medical review panel. We find that, in enacting the NHRBR, the legislature clearly intended to establish an independent cause of action for offenses listed in the NHRBR, which is separate from, and in addition to, any medical malpractice claim a patient may have. We further find that the claims made in the petition filed in this action allege violations of the NHRBR.
The instant matter arises out of the death of Edward Hebert, who was a resident of Chateau Living Center (Chateau) from December 27, 2000 through April 4, 2001. The petition stated a claim pursuant to NHRBR and alleges that during his residency in Chateau, Mr. Hebert's health deteriorated and he was transferred to a hospital on April 4, 2001 with pneumonia, acute renal failure, sepsis, malnutrition, and other medical problems, directly related to the inadequate care provided by Chateau and its personnel. Mr. Hebert died on April 9, 2001.
Some of the allegations of negligence made in the petition include: 1) allowing decedent's health to deteriorate; 2) failure to properly nourish and hydrate decedent; 3) failure to properly monitor and/or respond to decedent's changing vital signs; 4) failure to properly supervise and monitor decedent; 5) hiring and retention of incompetent staff; 6) failure to properly train staff in the care of elderly patients; and, 7) all other acts of negligence which may be discovered and proven at trial.
*491 In maintaining the exception of prematurity, the trial court found that the acts or omissions that constitute plaintiffs' claim are the result of "healthcare of professional services rendered" and fall under the Medical Malpractice Act. The court also stated:
This Court finds that nursing homes were included within the definition of hospitals in the Medical Malpractice Act prior to the Act 108. Finally, it is the opinion of this Court that hiring and training of staff was included within the definition of malpractice as defined by the Act prior to August 15, 2001.
This case presents a res nova issue for our review.[1] Accordingly, we look to the law, and the intent of the legislature for guidance. LSA-R.S. 40:2010.8 is entitled "Residents' Bill of Rights" and it applies to all nursing homes. Part (7) of that law gives residents the right to receive adequate and appropriate health care and protective and support services. Also, the important part of the law for our purposes herein is R.S. 40:2010.9 which provides as follows:
A. Any resident whose rights, as specified in R.S. 40:2010.8, are deprived or infringed upon shall have a cause of action against any nursing home or health care facility responsible for the violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual damages for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney's fees, costs of the action, and damages, unless the court finds that the losing plaintiff has acted in bad faith with malicious purpose, and that there was an absence of a justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees.
B. The remedies provided in this action are in addition to and cumulative with other legal and administrative remedies available to a resident and to the Department of Health and Hospitals or other governmental agencies.
In enacting the act the legislative intent was as follows:
The legislature finds that persons residing within nursing homes are isolated from the community and often lack the means to assert their rights as individual citizens. The legislature further recognizes the need for these persons to live within the least restrictive environment possible in order to retain their individuality and some personal freedom. It is therefore the intent of the legislature to preserve the dignity and personal integrity of residents of nursing homes through the recognition and declaration of rights safeguarding against encroachments upon nursing *492 home residents' right to self-determination. It is further the intent that the provisions of R.S. 40:2010.6 through R.S. 40:2010.9 complement and not duplicate or substitute for other survey and inspection programs regarding nursing homes.
We find the legislature clearly intended to establish an independent cause of action for offenses listed in the NHRBR, which is separate from, and in addition to, any medical malpractice claims the patient may have. Therefore, we hold that an action arising under the NHRBR Law may be brought in district court without a requirement of submission to a medical review panel and we reverse the trial court on that issue.
Some of the allegations made against defendant in the instant case include failure to properly nourish and hydrate, and a failure to hire, train, supervise and retain competent staff. When, as in the instant case, it is alleged that a resident of a nursing home is sent to a hospital only after he is starved, dehydrated and allowed to deteriorate to the extent that he cannot be helped, a cause of action has been asserted under several sections of the NHRBR, at the very least as a violation of his right to be treated with dignity, but specifically as a violation of:
(7) The right to receive adequate and appropriate health care and protective and support services, including services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules promulgated by the Department of Health and Hospitals.
(22) The right to have any significant change in his health status immediately reported to him and his legal representative or interested family member, if known and available, as soon as such a change is known to the home's staff.
We believe the circumstances of this case as alleged in plaintiffs' petition represent exactly what the legislature had in mind when it enacted the NHRBR. We find the intent of the legislature was to create a cause of action for maltreatment of the ill that was allegedly suffered by Mr. Hebert. Because we find a cause of action stated under the NHRBR is a distinct and separate action from any medical malpractice claim, we reverse the trial court's judgment in which it granted the exception for prematurity for failure to present the claim to a medical review panel, and remand the matter for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DUFRESNE and CHEHARDY, JJ., dissents.
CHEHARDY, J., dissents:
I would affirm the trial court's finding of prematurity. Although it has been held that an action arising under the Nursing Home Bill of Rights may be brought in a district court without a requirement of submission to a medical review panel,[2] I believe the alleged actions made the basis of this suit are appropriately classified as medical malpractice and, thus, the complaint requires submission to a medical review panel prior to suit.
"Malpractice" is defined by La.R.S. 40:1299.41(A)(8) as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Coleman *493 v. Deno, 01-1517, p. 16 (La.1/25/02), 813 So.2d 303, 315.
Whether conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA is determined by the following factors: (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional. Coleman, 01-1517, page 17, 813 So.2d at 315-316.
Reviewing plaintiffs' allegations in light of these factors establishes that the trial court did not err in finding that the allegations fit within the statutory definition of medical malpractice rather than the NHRBR.
First, the petition concerns the provision of medical treatment and alleges negligent care and want of professional skill by Chateau Living Center and its employees and that, as a result of inadequate care by defendants, decedent's health deteriorated. These allegations relate to Factor (1), "whether the particular wrong is "treatment related" or caused by a dereliction of professional skill."
Second, expert medical testimony is required to determine whether Chateau Living Center breached the applicable standard of care in monitoring requirements for nutrition, hydration and monitoring of the decedent. This satisfies Factor (2), "whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached."
Third, plaintiffs allege that defendants were responsible for monitoring and assessing decedent's condition and failed to provide such treatment. These allegations satisfy Factor (3), "whether the pertinent act or omission involved assessment of the patient's condition."
Fourth, plaintiffs allege that Chateau Living Center failed to provide services and activities it is licensed to perform. Chateau Living Center is a licensed nursing home facility and is required to provide services to its residents, pursuant to the Louisiana Administrative Code, including but not limited to service to persons requiring systematic nursing supervision because of illness or physical handicap. La.Admin.C. 48:I.7521(A)(2). Plaintiffs' allegations regarding failure to properly nourish and hydrate the decedent, failure to properly monitor his vital signs, and failure to hire, train, and retain competent staff satisfy Factor (4), "whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform."
Fifth, plaintiffs assert that the decedent's medical condition deteriorated as a result of the alleged inadequate care and treatment, thus alleging a cause-and-effect relationship between the alleged failure of care and the injuries. These allegations satisfy Factor (5), "whether the injury would have occurred if the patient had not sought treatment."
Sixth, plaintiffs do not allege that any of defendants' actions were intentional, thus satisfying Factor (6), "whether the tort alleged was intentional."
Accordingly, I would affirm the judgment granting the exception of prematurity.
*494 DUFRESNE, J., dissents:
I agree with Judge Chehardy's dissent and would affirm the trial court's judgment granting the exception of prematurity.
NOTES
[1] We note that Gorham v. HCA Health Services of La., 34,721 (La.App. 2 Cir. 5/17/01), 786 So.2d 348, 350 makes the statement that "In any event, an action arising under the Nursing Home Bill of Rights may be brought in a district court without a requirement of submission to a medical review panel." However, a careful reading of the case shows that that statement may be an argument put forth by one of the parties, or is at best, dicta from the court. The Gorham case only resolved the issue of "whether the amendment to the medical malpractice claim substituting the sister of the decedent for the grandchildren of the decedent related back to the date of the grandchildren's filing of the original claim."
[2] Gorham v. HCA Health Services of Louisiana, 34,721 (La.App. 2 Cir. 5/17/01), 786 So.2d 348.