873 So.2d 18 (2003)
Deloris McKNIGHT, Individually and as Surviving Parent of Leroy McKnight
v.
D & W HEALTH SERVICES, INC., et al.
No. 2002 CA 2552.
Court of Appeal of Louisiana, First Circuit.
November 7, 2003.
*19 David L. Bateman, Baton Rouge, Counsel for Plaintiff/Appellee Deloris McKnight.
*20 Gregory L. Ernst, New Orleans, Counsel for Defendant/Appellant D & W Health Services, Inc.
Before: FOIL, FITZSIMMONS, and GAIDRY, JJ.
GAIDRY, J.
This appeal is taken by the defendant, D & W Health Services, Inc. (D & W), a nursing home operator, from the trial court's judgment overruling its dilatory exception raising the objection of prematurity. In denying the exception on the grounds that a nursing home could not be a qualified health care provider entitled to a medical review panel under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, et seq. (the MMA), the trial court plainly erred. We accordingly reverse its judgment, but remand the case to the trial court for further proceedings consistent with this opinion.

FACTS
The present civil action is brought by Deloris McKnight (plaintiff), the mother of the late Leroy McKnight, a nursing home resident, who died on April 13, 2001. Plaintiff filed a petition for damages against D & W and its alleged liability insurer, Campania Management Company, Inc., alleging that Mr. McKnight died of injury, heat exhaustion, exposure, and other causes after wandering off the premises of Hillhaven Nursing Centers East, a nursing home operated by D & W. Plaintiff alleges that her son's death was caused by D & W's negligence and fault, and seeks "all available damages" for his wrongful death and the physical pain and suffering and mental anguish she claims he sustained prior to his death. She further alleges that D & W's acts and omissions also constituted abuse or neglect, entitling her to "additional damages, including penalties [sic] and attorneys' fees" pursuant to the Nursing Home Residents' Bill of Rights, La. R.S. 40:2010.8, et seq. (the NHRBR).
The defendants filed a responsive pleading combining dilatory and peremptory exceptions and their answer to the petition. In their dilatory exception, the defendants objected to plaintiff's petition on the grounds of prematurity, alleging that D & W is a qualified health care provider entitled to the benefit of a medical review panel prior to filing of suit, as provided by La. R.S. 40:1299.47.
On D & W's motion, its dilatory exception was set for hearing on August 19, 2002. Following argument of counsel, the trial court overruled the exception, on the grounds that a nursing home did not fall within the statutory definition of "health care provider" in La. R.S. 40:1299.41(A)(1) at the time of the alleged tort. Its judgment overruling the exception was signed on September 18, 2002. From that judgment, D & W instituted this appeal.

JURISDICTION
Appellate courts have the duty to examine their subject matter jurisdiction sua sponte, even when the parties do not raise the issue. McGehee v. City/Parish of East Baton Rouge, 00-1058, p. 3 (La.App. 1st Cir.9/12/01), 809 So.2d 258, 260.
The dilatory exception of prematurity is the proper procedural vehicle invoked by a qualified health care provider sued by a plaintiff who has not submitted a medical malpractice claim to a medical review panel. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119. A judgment overruling a dilatory exception of prematurity is an interlocutory judgment. See La. C.C.P. art. 1841. Interlocutory judgments are not appealable in the absence of a showing of irreparable injury.
*21 La. C.C.P. art. 2083. A judgment overruling a dilatory exception of prematurity and requiring a health care provider to forgo the benefit of a medical review panel is considered appealable in that the panel proceedings cannot be adequately replicated after reversal on appeal. Lange v. Earl K. Long Medical Center, 97-1661, p. 3 n. 1 (La.App. 1st Cir.6/29/98), 713 So.2d 1195, 1196 n. 1, writ denied, 98-2061 (La.11/13/98), 730 So.2d 935; Cashio v. Baton Rouge General Hospital, 378 So.2d 182, 183 (La.App. 1st Cir.1979). We therefore have jurisdiction to consider this appeal.

ANALYSIS
The character of plaintiff's cause of action must be determined from an examination of her petition's allegations. Plaintiff has alleged in her petition that D & W, as owner and operator of a "nursing home facility," had the "care, custody and control" of her son, a "resident" and "patient" of Hillhaven Nursing Centers East prior to the day he died. She further alleged that while a resident and patient, her son "was generally in a confused state of mind and was physically unable to care for himself." Plaintiff expressly alleged that D & W's actions in allowing her son to wander off its premises and in failing to locate him and "return him to proper care" constituted "abuse and/or neglect," entitling her to "additional damages, including penalties and attorneys' fees" under the NHRBR. (Our emphasis.) The allegations thus set forth both a delictual cause of action founded upon negligence and a concurrent, "cumulative" cause of action under the NHRBR. See La. R.S. 40:2010.9(B). The question becomes, is either alleged cause of action based upon "medical malpractice," so as to justify D & W's assertion of the right to a medical review panel under the MMA?
"Malpractice" for purposes of the MMA is defined as "... any unintentional tort or any breach of contract based on health care or professional services rendered or which should have been rendered by a health care provider to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient ...." La. R.S. 40:1299.41(A)(8). "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement. La. R.S. 40:1299(A)(9). The MMA does not define "handling" of a patient. The words of a law must be given their generally prevailing meaning. La. C.C. art. 11. As used above, "handling" may be therefore defined as the management or having overall responsibility for supervising or directing a patient. Merriam-Webster's Collegiate Dictionary 526 (10th ed.1998).
Initially, we address the trial court's conclusion that D & W, as a nursing home, was not statutorily qualified to be a "health care provider" under the MMA at the time of Mr. McKnight's death. The Louisiana Supreme Court definitively answered the question in Richard v. Louisiana Extended Care Centers, Inc., 02-0978 (La.1/14/03), 835 So.2d 460. The cause of action in that case also arose prior to the effective date of Acts 2001, No. 108, § 1, which amended La. R.S. 40:1299.41(A)(1) to specifically add "nursing home" to its listing of persons or entities entitled to seek licensure as qualified health care providers. The court noted that "[i]t is undisputed that a nursing home is a `health care provider' under the MMA," and that even prior to the 2001 amendment, the MMA's statutory definition of "hospital" included a "nursing *22 home."[1]Richard, 02-0978 at p. 9 n. 6, 835 So.2d at 466. See also Francis v. Health Care Capital, Inc., 933 F.Supp. 569, 572 (E.D.La.1996).
Here, it is apparent that the alleged negligent conduct would, if proven, amount to "a dereliction of professional skill." Plaintiff has alleged that D & W failed to properly supervise and restrain her late son from leaving its premises, yet invokes the NHRBR as the basis for the duty alleged to have been violated. The NHRBR promotes "the least restrictive environment possible" for nursing home residents, with freedom from "physical and chemical restraints" and the "right of self-determination." La. R.S. 40:2010.6, 40:2010.8. The duties imposed upon nursing homes in that regard obviously require them to maintain a delicate balance between patients' freedom from restraint and the need for protective restraint of impaired patients. The exercise of such competing duties necessarily should be subject to professional standards of skill and care. It is therefore likely that expert testimony will be required in this case as to such standards and whether any were breached by D & W.
In Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169, the Louisiana Supreme Court held that although malpractice may involve the rendition of professional services, the patient must be receiving "health care" when the negligent rendition of such services occurs, meaning that the negligence must occur "during the patient's medical care, treatment or confinement." Price, 96-2408 at p. 6, 693 So.2d at 1172-73. We conclude that plaintiff's allegations clearly bring her claims within the requisite context of "health care" rendered to a "patient" during his "confinement" at a nursing home.
The Louisiana Supreme Court has adopted a six-factor test for determining whether alleged negligent conduct constitutes "malpractice," as opposed to other fault. The factors to be considered include:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient's condition;
(4) whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
Coleman v. Deno, 01-1517, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315-16. Based upon our review of plaintiff's petition, the first, second, fourth, fifth, and sixth factors militate in favor of the conclusion that plaintiff's claims are grounded in malpractice, and the third factor may very well favor this conclusion.
*23 The fact that plaintiff may assert alternative theories of liability against D & W does not remove her cause of action from the penumbra of the MMA, if her allegations state a claim for medical malpractice. Cashio, 378 So.2d at 185. Likewise, the fact that plaintiff may have concurrent and overlapping causes of action for both medical malpractice and violation of the NHRBR does not change the fact that most, if not all, of the alleged wrongful acts fall within the parameters of the MMA. (Our emphasis.) The issue then becomes whether plaintiff may proceed to present her parallel claims brought under the NHRBR without submitting them to a medical review panel.
The Louisiana Supreme Court, in the Richard case, cited supra, squarely held that "any claim of medical malpractice [asserted under the NHRBR] against a qualified health care provider is encompassed within the MMA and must be reviewed by a medical review panel prior to suit." Richard, 02-0978 at p. 11, 835 So.2d at 467. Discussing the requirement that the injury occur during "medical care, treatment or confinement," the court took cognizance of the fact that in the case of a nursing home, a resident is not always receiving medical care or treatment, but may always be said to be "confined" to the nursing home. The court concluded that even if a patient was "confined" or was being "handled" at the time of the alleged negligence, the legislature intended that the negligence "must be related to the nursing home resident's medical treatment," under the Coleman test, to constitute malpractice. Richard, 02-0978 at pp. 13-14, 835 So.2d at 468-69. Because the record was insufficient to permit the determination of whether the patient "was placed in the nursing home for treatment of a particular condition, rather than 24-hour custodial shelter," or was en route to or from medical treatment at the time of her fall, the court remanded the case to the trial court for determination of those issues. Richard, 02-0978 at p. 13, 835 So.2d at 469.
Unlike the allegations in Richard, plaintiff's allegations here are sufficient to permit the determination that a medical malpractice claim has been asserted under both the MMA and the NHRBR. See, e.g., McLemore v. Westwood Manor Nursing and Rehabilitation, L.L.C., 37,450, pp. 5-6 (La.App. 2nd Cir.8/20/03), 852 So.2d 1170, 1174. Plaintiff's petition alleges that Mr. McKnight was a resident of the nursing home because he "was generally in a confused state of mind and was physically unable to care for himself and therefore in need of "adequate care." These allegations support the conclusion that the alleged negligence was "treatment related," as the care of physically and mentally incapacitated patients is the type of health care for which nursing homes are generally dedicated.[2] The essence of plaintiff's allegations is that D & W did not provide enough supervision (or "handling") of Mr. McKnight. As was observed in Coleman, "[c]ommon sense indicates that a claim *24 based on failure to provide enough treatment is clearly linked to treatment." Coleman, 01-1517 at p. 22, 813 So.2d at 318.
However, we cannot determine from plaintiff's petition or the record before us whether D & W's authority to operate and conduct of business of Hillhaven Nursing Centers East was in the capacity of a qualified health care provider within the meaning of La. R.S. 40:1299.42, nor whether the medical review panel procedure was in fact completed prior to the institution of suit. The petition is silent as to those relevant facts, and the record contains no competent evidence upon which such a factual determination may be made.[3]
Louisiana Code of Civil Procedure article 930 provides in pertinent part:
On the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.
Here, the trial court did not have the benefit of evidence as to D & W's status and, assuming it was a qualified health care provider, whether the medical review panel procedure was accomplished prior to suit being filed. Evidence as to the existence of those predicate facts is crucial to the proper disposition of the exception. See La. R.S. 40:1299.41(D) and La. R.S. 40:1299.47.
As the trial court's determination of the exception was based upon its error of law as to the applicability of the MMA to nursing homes, its decision in that regard is not entitled to deference from this court. Our de novo review leads us to the conclusion that reversal of the trial court's judgment and remand for an evidentiary hearing is appropriate. See Richard, 02-0978 at pp. 13-14, 835 So.2d at 468-69; Pender v. Natchitoches Parish Hospital, 01-1380, pp. 4-5 (La.App. 3rd Cir.5/7/03), 844 So.2d 1107, 1110.[4]

DECREE
The judgment of the trial court overruling the dilatory exception of prematurity of the defendant, D & W, is reversed, and the case is remanded to the trial court for an evidentiary hearing to determine whether D & W was in fact a qualified health care provider under La. R.S. 40:1299.42 at the time of the alleged tort and, if so, whether a medical review panel procedure was completed prior to the filing of plaintiff's petition. The costs of this appeal are assessed equally between the opposing parties.
REVERSED AND REMANDED.
NOTES
[1] La. R.S. 40:1299.41(A)(4). This statute includes any "nursing home" or "home" as defined in La. R.S. 40:2009.2 within the definition of "hospital." The latter statute defines" nursing home" or "home" as "a private home, institution, building, residence or other place ... which undertakes ... to provide maintenance, personal care, or nursing for persons who, by reason of illness or physical infirmity or age, are unable to properly care for themselves."
[2] See La. R.S. 40:2009.2(1) and n. 1, supra. In Cashio, the plaintiffs' decedent died of a "hospital staph" infection following surgery. The plaintiffs sought to characterize the basis of the hospital's liability as the negligence of a premises owner, rather than malpractice. The Louisiana Supreme Court noted that the term "treatment" is not defined in the MMA, and declined to "attempt to supply a universal definition of treatment." Cashio, 378 So.2d at 184. It nevertheless rejected the plaintiffs'"limited and very selected definition" of treatment as encompassing only those acts immediately involved with the surgery there involved, holding that "[a] plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity of two or more belonging to the defendant as the desired one." Id.
[3] The trial court's judgment states that it was rendered after the trial court considered "the stipulations ... [and] evidence." D & W attached copies of its Certificate of Enrollment with the Louisiana Patients' Compensation Fund, plaintiff's petition, and correspondence relating to plaintiff's request to convene a medical review panel as exhibits to its memorandum in support of its exception. But the record and minute entries reveal that those documents were not introduced into evidence at the hearing, nor was any testimony or stipulation presented. See Pyburn v. Walle Corporation, 454 So.2d 1128, 1130 (La.App. 4th Cir. 1984). We may not consider the exhibits attached to the memorandum in determining the issues on appeal, as they are not evidence and therefore not properly part of the record on appeal. Tranum v. Hebert, 581 So.2d 1023, 1026 (La.App. 1st Cir.1991), writ denied, 584 So.2d 1169 (La. 1991).
[4] See also Hebert v. Chateau Living Center, L.L.C., 02-462, p. 2 (La.App. 3rd Cir.9/30/03), 836 So.2d 489.