927 So.2d 368 (2005)
Franklin Jay WILLIAMS and Josephine P. Williams
v.
NOTAMI HOSPITALS OF LOUISIANA, INC., d/b/a Lakeview Regional Medical Center and Lakeview Medical Center, LLC, d/b/a Lakeview Regional Medical Center.
No. 2004 CA 2289.
Court of Appeal of Louisiana, First Circuit.
November 4, 2005.
*369 Wayne M. LeBlanc, Metairie, for Plaintiffs-Appellees Julie Williams Harris and Josephine P. Williams.
C.T. Williams, Jr., Donald C. Douglas, Jr., James W. Vitrano, Mandeville, for Defendant-Appellant Lakeview Regional Medical Center.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
WELCH, J.
In this medical malpractice action, the defendant, Lakeview Medical Center, LLC, d/b/a Lakeview Regional Medical Center ("LRMC"), appeals from a trial court judgment rendered in favor of the plaintiffs, Franklin Jay Williams[1] and Josephine P. Williams, overruling the defendant's dilatory exception raising the objection of prematurity. For the following *370 reasons, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL HISTORY
On January 1, 2000, Franklin Jay Williams, who was eighty-three years old at the time, presented to the emergency room at LRMC, with complaints of fever, weakness, and diarrhea. In the emergency room, Mr. Williams was initially treated by Dr. Robert Limbaugh. He reported a past medical history of seizure disorders, angioplasty, and crohns disease. Thereafter, Mr. Williams was admitted to LRMC under the care of Dr. Roy Contreas Saguiguit. On admission, it was noted that the plaintiff was confused and disoriented, and therefore, a fall prevention program was implemented. Mr. Williams was placed in a hospital room furnished with a bed equipped with an alarm system that would notify the hospital staff if Mr. Williams attempted to get out of his bed.
On January 2, 2000, at approximately 12:34 p.m., a nurse observed Mr. Williams sitting up in his hospital bed and eating his lunch. At approximately 2:00 p.m., a nurse found Mr. Williams lying in diarrhea on the floor of his hospital room with an abrasion on his head. On January 13, 2000, it was discovered that Mr. Williams sustained a brain injury as a result of this fall.
On December 18, 2000, Mr. Williams and his wife, Josephine P. Williams filed a complaint with the Commissioner of the Division of Administration, requesting that a medical review panel be convened in order to review alleged claims of medical malpractice committed by LRMC, Dr. Limbaugh, and Dr. Saguiguit in connection with the medical treatment and care rendered to Mr. Williams when he was a patient at LRMC. Pursuant to this complaint, a medical review panel was convened and ultimately issued its opinion and reasons on May 9, 2002. In its opinion and reasons, the medical review panel found that the evidence did not support the conclusion that Dr. Limbaugh, Dr. Saguiguit, and LRMC failed to meet the applicable standard of care, as charged in the complaint.
Thereafter, on July 12, 2002, the plaintiffs filed a petition for damages against LRMC,[2] with allegations similar in nature to those contained in the complaint filed with the Commissioner of the Division of Administration. The petition also alleged that this matter had been submitted to a medical review panel, that the medical review panel rendered its opinion on May 9, 2002, and that the medical review panel's opinion was mailed to all parties on June 13, 2002.
LRMC answered the petition on September 6, 2002, essentially denying the allegations contained in the petition, except to admit Mr. Williams was admitted as a patient to LRMC, to admit it was a qualified health care provider under the Medical Malpractice Act, La. R.S. 40:1299.41, et seq. ("MMA"), and to admit the matter had been submitted to a medical review panel. In further answering, LRMC contended that the care and treatment rendered to Franklin Williams at LRMC was proper and in accordance with standards of care required of hospitals.
Thereafter, defendants propounded discovery to the plaintiffs pertaining to information about witnesses, including expert *371 witnesses that the plaintiffs were going to utilize at trial. With regard to expert witnesses, the plaintiffs responded that they had not yet hired an expert witness, but that the chart had been reviewed and they were advised that the nurses were negligent in not having the bed rails up and/or the bed alarm on.
On February 7, 2003, LRMC filed a motion for summary judgment, together with supporting exhibits, alleging that there were no genuine issues of material fact in dispute and that LRMC was entitled to judgment as a matter of law dismissing the plaintiffs' claims against it. Specifically, LRMC alleged that the plaintiffs failed to produce an expert witness who could testify that LRMC and/or its employees had breached the applicable standard of care in treating Mr. Williams or contributed to his injuries, and that the plaintiffs failed to produce evidence indicating that the failure to monitor the bed alarm and/or failure to respond to the bed alarm signal was a breach of the standard of care constituting negligence on the part of the LRMC. On August 29, 2003, the plaintiffs filed an opposition to the defendant's motion for summary judgment, with supporting exhibits.
At the hearing on September 8, 2003, the trial court allowed the plaintiffs sixty days within which to name an expert, and upon their failure to do so, the case would be dismissed. On September 19, 2003, the trial court signed a written judgment granting the defendant's motion for summary judgment, and further providing that upon the failure of the plaintiffs to properly identify an expert witness to establish the standard of care within sixty calendar days of September 8, 2003, judgment would be entered dismissing the matter with prejudice at the plaintiffs' costs. Thereafter, the plaintiffs identified Carolyn Easley, Ph.D., R.N., C. and Harley McElroy, CRN, CLNC, as their expert witnesses.
On February 5, 2004, the plaintiffs filed their first supplemental and amended petition for damages.[3] In response, LRMC filed a dilatory exception raising the objection of prematurity, contending that the claims set forth therein were never presented to a medical review panel, and therefore, those claims were premature and should be dismissed. The plaintiffs opposed the exception, contending that the medical review panel did consider the claims set forth in the supplemental and amended petition. In support of their respective positions on the dilatory exception, both parties submitted: (1) a copy of the plaintiffs' complaint filed with the Commissioner of the Division of Administration, and (2) a copy of the plaintiffs' submission of evidence/position paper to the medical review panel.
At the hearing on the dilatory exception, the trial court overruled the exception, relying on Perritt v. Dona, 2002-2601, 2002-2603 (La.7/2/03), 849 So.2d 56. The trial court signed a written judgment[4] overruling LRMC's dilatory exception raising the objection of prematurity on May 11, 2004, and it is from this judgment that the defendant has appealed.[5] On appeal, *372 LRMC's sole assignment of error is that the trial court erred in overruling its dilatory exception raising the objection of prematurity.

STANDARD OF REVIEW
The facts are not in dispute with respect to this appeal. Therefore, the issue before this court is whether the trial court correctly interpreted and applied the law. Appellate review of questions of law is simply a review of whether the trial court was legally correct or incorrect. Dunn v. Bryant, 96-1765 (La.App. 1st Cir.9/19/97), 701 So.2d 696, 698-99, writ denied, 97-3046 (La.2/13/98), 709 So.2d 752.

PREMATURITY
Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of prematurity. The exception raising the objection of prematurity may be utilized in cases where the applicable law or contract has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. Hidalgo v. Wilson Certified Express, Inc., 94-1322 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 116. Generally, the person aggrieved in such a case must exhaust all administrative remedies before being entitled to judicial review. Id.
In raising the dilatory exception raising the objection of prematurity, the exceptor bears the initial burden of showing that an administrative remedy or procedure applies, by reason of which the judicial action is premature. Ginn v. Woman's Hospital Foundation, Inc., 99-1691 (La.App. 1st Cir.9/22/00), 770 So.2d 428, 431, writ denied, XXXX-XXXX (La.2/2/01), 784 So.2d 647; Lewis v. Crossman, 582 So.2d 991, 994 (La.App. 1st Cir. 1991). Once the existence of an administrative remedy is established, the burden then shifts to the plaintiff to show that the specified administrative remedies or procedures have been exhausted. Ginn, 770 So.2d at 431.
The MMA provides such a mechanism in that it requires all medical malpractice claims against covered health care providers to be submitted to a medical review panel prior to filing suit in any court. La. R.S. 40:1299.47(B)(1)(a)(i); Dunn, 701 So.2d at 699. This administrative procedure affords the medical review panel an opportunity to render its expert opinion on the merits of a complaint. Dunn, 701 So.2d at 699 (citing Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415, 419). If an action against a health care provider covered by the MMA has been commenced in a court and the complaint has not been first presented to a medical review panel, then the dilatory exception raising the objection of prematurity is the proper procedural vehicle to *373 be invoked by the covered health care provider. Dunn, 701 So.2d at 699; see also McKnight v. D & W Health Services, Inc., 2002-2552 (La.App. 1st Cir.11/7/03), 873 So.2d 18, 20 (citing Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977 (La.2/29/00), 758 So.2d 116, 119).

MEDICAL REVIEW PANEL
The MMA must be strictly construed because it provides limitations on the liability of a health care provider and provides advantages to health care providers in derogation of the rights of tort victims. Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992); Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1216. One such advantage is that all malpractice claims against health care providers covered under the MMA shall be reviewed by a medical review panel. La. R.S. 40:1299.47(A)(1)[6]. Additionally, no action against a health care provider covered by the MMA may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel. La. R.S. 40:1299.47(B)(1)(a)(i). The medical review panel "shall have the sole duty" to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint. La. R.S. 40:1299.47(G).
With regard to malpractice complaints, in Perritt, 849 So.2d at 65, the Louisiana Supreme Court, determined:
that the statute [MMA] says nothing further about the required format for the "proposed complaint;" therefore, defendants can not require the plaintiffs to specify the health care providers' standards of care. Furthermore, the language of La. R.S. 40:1299.47(G) suggests that it is the duty of the medical review panel to determine the appropriate standard of care based on the evidence presented and whether defendant breached that standard.... [S]etting out the appropriate standard of care is the role of the medical expert and not a claimant. We note that the MMA does not specifically delineate that the parties are entitled to "notice." The claim is not required to be a fact pleading with the specificity that may be required of a petition in a lawsuit; rather, the claim need only present sufficient information for the panel to make a determination as to whether the defendant is entitled to the protection of the Act.

DISCUSSION
In the plaintiffs' December 18, 2000 complaint filed with the Commissioner of the Division of Administration, they asserted a claim of medical malpractice against LRMC, Dr. Limbaugh, and Dr. Saguiguit, "in conjunction with negligent medical treatment and care rendered to Franklin Jay Williams when he was a patient" at LRMC. Plaintiffs further alleged that Mr. Williams was admitted to LRMC on January 1, 2000, in a weakened and confused state, that he was seen in the emergency room by Dr. Limbaugh, and that he was thereafter admitted to the hospital and seen by Dr. Saguiguit and other employees. The plaintiffs further alleged that due to the failure of LRMC, Dr. Limbaugh, and Dr. Saguiguit to institute a fall prevention program for Mr. Williams, he sustained a fall, which resulted in a brain injury that was neither diagnosed nor treated until eleven days after *374 the fall. In their submission of evidence to the medical review panel, plaintiffs further alleged that Mr. Williams should have been restrained.
On May 9, 2002, the medical review panel issued its opinion and reasons finding that the evidence did not support the conclusion that the defendants failed to meet the applicable standard of care as charged in the complaint. The panel reasoned that Dr. Limbaugh treated the patient appropriately in the emergency room and within the standard of care, and that Dr. Saguiguit evaluated the patient and treated him for his multiple medical problems. As to LRMC, the medical review panel found:
(1) The patient had an unexpected event that could not be foreseen.
(2) This patient was not a candidate for restraints.
(3) The hospital personnel identified the neurologic changes, documented them appropriately, and notified the proper physician in care.
Thus, the plaintiffs submitted their complaint claiming medical malpractice arising out of Mr. Williams's fall during the January 1, 2000 admission to LRMC, to the medical review panel and have exhausted their administrative remedy with regard to all claims of malpractice associated with the fall. The issue to be determined by this court is whether LRMC has clearly shown that an administrative remedy remains available to the plaintiff with respect to the allegations raised by the plaintiffs in their first supplemental and amended petition for damages.
The plaintiffs' original petition for damages[7] alleged as follows:
3.
Because of his weakened condition, his seeming confusion, his attempts to get out of bed and his decreased nutrition and weight loss, the hospital, its employees, staff and/or treating physicians instituted a fall prevention protocol, having to place a bed alarm on petitioner Franklin Williams' bed that would alert hospital staff of his movement in the bed or attempts to leave the bed.
4.
On January 1 and 2, 2000, there are nurses' notes stating that the bed alarm is on, however, on January 2, 2000, between 1400 and 1733 hours, the patient is found lying on the floor, which is noted in the hospital records to be a failure in the preventive fall strategies.
5.
The sole and proximate cause of the fall of petitioner and injuries to petitioner is the failure of the nursing personnel and employees of Lakeview Regional Medical Center to have the bed alarm "on", failure to monitor the bed alarm and/or failure to respond to the bed alarm signal that would have indicated that petitioner was moving or attempting to climb over his bed railings. Petitioner further alleges that res ipsa loquitur is applicable.
The plaintiffs' first supplemental and amended petition for damages amended paragraph 5 to read as follows:
The sole and proximate cause of the fall of petitioner and his resulting injuries is due to the negligence and failure of the nursing personnel, employees and *375 hospital, in the following particulars to wit:
1. Failure to judge petitioner as high risk for falls;
2. Failure to have adequate criteria to determine fall risk;
3. Failure to initiate an appropriate fall risk intervention at the time of admission;
4. Failure to have in place fall prevention protocols adequate to protect and prevent the fall of petitioner;
5. Failure to implement preventive strategies prior to his fall;
6. Failure to maintain the bed alarm system;
7. Failure to monitor the bed alarm;
8. Failure to have the bed alarm on;
9. Failure to respond to the bed alarm signal;
10. Failure to use wrist and/or vest restraints;
11. Failure to establish a regular toileting based on his recurrent diarrhea;
12. Failure to have a bedside commode;
13. Petitioners further allege that res ipsa loquitor (sic) is applicable.
LRMC contends that since alleged failure 8 (failure to have the bed alarm on) was the only claim presented to the medical review panel in plaintiffs' submission of evidence, that all of the other alleged failures associated with the fall must now be presented to the medical review panel. We disagree. The plaintiffs filed a complaint containing a general allegation of medical malpractice that caused Mr. Williams to sustain a fall during his January 2000 stay and a specific allegation regarding the failure of defendants to institute a fall prevention program, and in its' submission to the medical review panel, the plaintiff made specific allegations regarding the failure of defendants to use restraints. Then, after reviewing "all evidence" as required by the La. R.S. 40:1299.47(G), the medical review panel rendered its opinion.
LRMC has failed to present any evidence (or persuasive argument) that the allegations contained in the plaintiffs' first supplemental and amended petition for damages were not also encompassed by the claim of medical malpractice contained in plaintiffs' complaint filed with the Commissioner of the Division of Administration and their submission of evidence to the medical review panel. Moreover, we find that LRMC has also failed to show that the plaintiffs' allegation regarding the failure to institute a "fall prevention program" does not also encompass other aspects of fall risk assessments, such as bed alarms, restraints, toileting procedures and bedside commodes, as alleged in the plaintiffs' first supplemental and amended petition for damages.
In support of its position that the allegations contained in the plaintiffs first supplemental and amended petition are premature, LRMC relies on Lewis v. Crossman, 582 So.2d 991 (La.App. 1st Cir. 1991), wherein another panel of this court held that an amending and supplemental petition was premature. However, we find the defendant's reliance on Lewis misplaced. In Lewis, the plaintiff submitted a complaint to the medical review panel, which specifically claimed medical malpractice against Marshall Crossman, D.C., arising only out of the use of a multi-level treatment table to adjust plaintiff's spine, and against William Dear, D.C., for failing to supervise and instruct Dr. Crossman in the use of the treatment table. After the medical review panel process was completed, plaintiff filed a petition for damages alleging medical practice regarding the claims submitted to the medical review panel. Plaintiff later filed an amending *376 and supplemental petition alleging that the same health care provider defendants committed other acts of malpractice, namely:
(1) Failure to perform adequate x-ray examinations during any and all office visits with defendants;
(2) Failure to perform any examinations and x-rays subsequent to treatment by Marshall Crossman, D.C.... when William Dear, D.C. knew or in the exercise of reasonable care should have known that plaintiff suffered an injury;
(3) Abandonment of care to plaintiff;
(4) Failure to properly direct and supervise the work of Marshall Crossman, D.C.
Lewis, 582 So.2d at 993.
The trial court granted the dilatory exception raising the objection of prematurity, and this court affirmed the judgment, finding that allegations 1, 2 and 3 constituted new complaints or claims of malpractice unrelated to the treatment table that had not been presented to the medical review panel.
The Lewis holding is inapposite to the present case because the allegations contained in plaintiffs' first supplemental and amended petition for damages do not raise new complaints or claims of medical malpractice, but merely set forth clarifying facts regarding the standards of care applicable to the fall sustained by Mr. Williams during the January 1, 2000 admission, and the alleged breaches of those standards of care by LRMC, all of which should have been considered by the health care providers comprising the medical review panel pursuant to their statutory duty.
At the medical review panel stage, the plaintiff is not required to set out the appropriate standards of care and specifically delineate every breach of the applicable standards of care, but rather need only present sufficient information for the medical review panel to make a determination as to whether the defendant health care provider is entitled to the protections of the MMA regarding the claimed medical malpractice.[8]See Perritt, 849 So.2d at 65.
In this case, plaintiffs' complaint and submission of evidence presented sufficient information for the medical review panel to make a determination regarding whether the defendant health care providers failed to meet the applicable standards of care regarding the fall sustained by Mr. Williams's during his January 2000 stay. The medical review panel specifically determined that Dr. Limbaugh's emergency room treatment was appropriate, that Dr. Saguiguit's evaluation and treatment for multiple problems was appropriate, and that the treatment at LRMC did not fall below the applicable standard of care because Mr. Williams had an unexpected event, was not a candidate for restraints and because the subsequent neurological changes were properly identified, documented and reported.
After thoroughly reviewing the record, we find that the administrative remedy required to address the allegations made in the supplemental and amending petition has been exhausted, and that LRMC has failed to show that an administrative remedy remains available. Having made such determination, we find the plaintiffs' first supplemental and amended petition for damages was not premature and that the defendant's dilatory exception raising the objection of prematurity was properly *377 overruled by the trial court. Accordingly, we hereby affirm the judgment of the trial court.

CONCLUSION
For the above and foregoing reasons, the May 11, 2004 judgment of the trial court, overruling the dilatory exception raising the objection of prematurity filed by Lakeview Medical Center, LLC, d/b/a Lakeview Regional Medical Center is hereby affirmed.
All costs of this appeal are assessed to the defendant/appellant, Lakeview Regional Medical Center, Inc. d/b/a Lakeview Regional Medical Center.
AFFIRMED.
NOTES
[1] Pursuant to a motion granted by this court on June 23, 2005, Julie Williams Harris was substituted as a plaintiff in this matter for her father, Franklin Jay Williams.
[2] Notami Hospitals of Louisiana, Inc., d/b/a Lakeview Regional Medical Center, was also named as a defendant. However, pursuant to consent judgment rendered and signed on December 4, 2002, Notami Hospitals of Louisiana, Inc., d/b/a Lakeview Regional Medical Center was dismissed as a defendant in this suit.
[3] It is undisputed by the parties that this pleading was only an "amended" petition, not a "supplemental" petition, as all of the claims set out therein were exigible on the date of the original petition was filed.
[4] This judgment is incorrectly entitled "ORDER".
[5] Although a judgment overruling a dilatory exception raising the objection of prematurity is an interlocutory judgment (La.C.C.P. art. 1841), which is not appealable in the absence of a showing of irreparable injury (La.C.C.P. art. 2083), this court has determined that a judgment overruling a dilatory exception of prematurity and requiring a health care provider to forgo the benefit of a medical review panel is considered appealable in that the panel proceedings cannot be adequately replicated after reversal on appeal. McKnight v. D & W Health Services, Inc., 2002-2552 (La. App. 1st Cir.11/7/03), 873 So.2d 18, 21; Lange v. Earl K. Long Medical Center, 97-1661 (La. App. 1st Cir.6/29/98), 713 So.2d 1195, 1196 n. 1, writ denied, 98-2061 (La.11/13/98), 730 So.2d 935; Cashio v. Baton Rouge General Hospital, 378 So.2d 182, 183 (La.App. 1st Cir.1979).

In this case, LRMC initially filed an application for supervisory writs with this court; however, the writ panel of this court, citing McKnight v. D & W Health Services, determined that the trial court's ruling was an appealable judgment, and therefore, ordered that this case be remanded to the trial court with instructions that it grant LRMC an appeal. See Williams v. Lakeview Regional Medical Center, 2004 CW 1216 (La.App. 1st Cir.6/28/04) (unpublished writ action).
[6] Louisiana Revised Statute 40:1299.47(A)(1) was re-designated as 40:1299.47(A)(1)(a) by 2003 La. Acts, No. 961, § 1.
[7] LRMC admits in paragraph 9 of its answer that these alleged failures were considered by the medical review panel.
[8] 2003 La. Acts, No. 961, § 1, prospectively added (A)(1)(b)(vi) to La. R.S. 40:1299.47, but still only requires the request for review of a malpractice claim or a malpractice complaint to contain a "brief description of the alleged malpractice."