GUIDRY, J.
|2In response to a writ for supervisory review filed by the defendant, Plaquemine Manor Nursing Home, Inc. (Plaquemine Manor), this Court granted certiorari to consider the correctness of the trial court’s June 15, 2012 ruling that denied Plaque-mine Manor’s motion to dismiss the Plaintiffs’ suit and granted Plaintiffs’ motion to vacate the trial court’s prior April 13, 2012 final judgment that sustained the dilatory exception raising the objection of prematurity to Plaintiffs’ petition for damages, and dismissed the petition without prejudice.[1] The June 15, 2012 ruling effectively vacates the April 13, 2012 final judgment and enters judgment overruling Plaque-mine Manor’s exception of prematurity.
Plaquemine Manor raises several issues for review. However, the primary issue this Court is compelled to address is whether the trial court erred as a matter of law where it found that the rendition of the medical review panel opinion prior to the issuance of the February 23, 2012 ruling sustaining the exception of prematurity and signing of the April 13, 2012 final judgment rendered the otherwise timely filed exception of prematurity moot or otherwise rendered the claims asserted in Plaintiffs’ petition simply tort claims that are not governed by the Louisiana Medical Malpractice Act (the MMA), La. R.S. 40:1299.41 et seq.
For the following reasons, we grant the writ, vacate the trial court’s June 15, 2012 ruling, reinstate the April 13, 2012 final judgment, and grant Plaquemine Manor’s motion to dismiss Plaintiffs’ suit.
1 «FACTS AND PROCEDURAL HISTORY
Plaintiffs, Olivia Dutrey and Jeanne Bingham, are the surviving siblings of the decedent, Junius Bingham, a resident of Plaquemine Manor. Plaintiffs allege that on August 7, 2009, the decedent, who was blind and suffered from dementia, was allowed to smoke a cigarette unsupervised. The decedent was severely burned when his shirt caught fire. His injuries ultimately resulted in his death on August 23, 2009.
On August 9, 2010, Plaintiffs contemporaneously filed a request for a medical review panel with the Louisiana Patient’s Compensation Fund (PCF) and a Petition for Damages (the Petition) naming Plaque-mine Manor and a fictitious “Jane Doe, LPN” as defendants. The allegations in the request for a medical review panel and the Petition are essentially identical. Plaintiffs alleged that the decedent’s injuries and death were caused by the substandard care and conduct of Plaquemine Manor and its employee, Jane Doe, LPN. Specifically, they contend the defendants failed to: “properly supervise decedent’s conduct”; properly assess decedent’s condition” and “state of mind”; and “generally meet the standard of care required in the above described situation.”
*939 On August 27, 2010, Plaquemme Manor filed an exception of prematurity asserting that the claims in the Petition sound in medical malpractice and as a qualified health care provider under the MMA, it is entitled to have all medical malpractice claims presented to a medical review panel for review and for an opinion to be rendered before any action for medical malpractice could be commenced against it in court. Plaquemine Manor urged the Petition should be dismissed as premature because the allegations in the Petition and in the medical malpractice complaint are identical and ' Plaintiffs brought suit in court before the medical review panel reviewed and rendered an opinion on their malpractice claims.
|4In December of 2010, the trial court issued an order that set deadlines for Plaintiffs’ opposition and Plaquemme Man- or’s rebuttal memoranda. The trial court further ordered that the matter would be taken under advisement and there would be no oral arguments except upon an order of the trial court or motion of any party setting forth the reasons for oral arguments.
After the last memorandum was submitted, Plaquemine Manor filed a motion to set the exception for hearing to allow introduction of evidence and testimony and oral arguments. Although Plaquemine Manor maintained the exception could be sustained on the face of the Petition and its certificate of enrollment from the PCF, it urged that whether the MMA applied to Plaintiffs’ claims was a significant issue and that it was important that the ruling on the exception - be made with a well established record for the trial court’s consideration.
The trial court denied the request. However, Plaquemine Manor subsequently filed a motion for leave to file a supplemental memorandum for the purpose of offering for consideration the attached affidavit of its care plan nurse, Ina Edwards, and the documents attached to the affidavit.[2] . The trial court granted thé motion and allowed the documents to be filed into the record.
For reasons not disclosed in the record, the exception remained under advisement for twelve months. On February '23, 2012, the trial court issued a ruling that sustained Plaquemine Manor’s exception alleging prematurity and ordered that a judgment be submitted. Notice of the ruling was mailed on March 8,2012.
What complicated this otherwise ordinary prematurity determination is that during the lengthy period the exception alleging prematurity was under | .^advisement, the medical review panel convened and rendered its opinion before the trial court issued its February 23, 2012 ruling.[3] The determination was further *940 complicated by the procedural history following the February 23, 2012 ruling, which the trial court described as “confusing at best.”
On the day after the trial court ruled on the exception alleging prematurity, Plaintiffs filed a motion for leave to file a first amended and supplemental petition for damages (the Amended Petition). The Amended Petition removed the fictitious “Jane Doe, LPN” and added eight Plaque-mine Manor employees and a fictitious insurance company as defendants. The Amended Petition also amended the original petition to allege the newly added employee defendants were in the course and scope of their employment with Plaque-mine Manor at the time of the incident.[4] Other than these changes, the Amended Petition does not add or change in any substantive way the alleged facts of the incident or the allegations of negligence asserted against Plaquemine Manor or the employee defendants. On March 8, 2012, the trial court granted Plaintiffs leave to file the Amended Petition. On March 9, 2012, Plaquemine Manor filed an opposition to Plaintiffs’ motion for leave to amend the petition.
The record indicates the trial court held a telephone conference with the parties on March 12, 2012, concerning Plaintiffs’ objection to Plaquemine Manor’s opposition to the motion for leave to amend the petition. On March 13, 2012, | fiPlaquemine Manor circulated a proposed final judgment for the February 23, 2012 ruling to Plaintiffs’ counsel. On March 22, 2012, Plaquemine Manor submitted the proposed final judgment, accompanied by a Rule 9.5 Certificate, to the trial court.
Also on March 22, 2012, apparently as a follow-up to the telephone conference, the trial court sent all counsel a letter suggesting the following:
Having considered Plaintiffs [sic] Motion to Amend/Supplement, Defendant’s Opposition thereto; the concerns of the Parties vis-a-vis telephone conference; as well as Defendant’s letter dated March 13, 2012 recapitulating the telephone conference; this Court proposes that the best way to resolve this matter and to move forward is by entertaining a Motion to Dismiss Plaintiffs [sic] suit. Of course, realizing that the pending Motion to Amend if DENIED would in effect equate to a Dismissal; nevertheless, a Motion to Dismiss will still need to be Granted for obvious reasons.
Therefore, to move this matter forward I propose Defendant file a Motion and Order for Dismissal. Having made this observation, I do not suggest that this Court has unequivocally predetermined the outcome of this issue[;] however, this procedure will at least allow this matter to move forward.
As the trial court suggested, Plaquemine Manor filed a motion to dismiss and supporting memorandum on March 29, 2012. In the transmittal letter, Plaquemine Man- or advises the trial court that it had submitted a proposed final judgment prior to receiving the trial court’s March 22, 2012 letter. Plaquemine Manor asked the trial court to “disregard the proposed judgment.”
On April 13, 2012, the trial court signed the proposed final judgment, sustaining *941 Plaquemine Manor’s exception alleging prematurity and dismissed the petition without prejudice. Plaintiffs filed an opposition to the Motion to Dismiss and a Motion to Vacate and/or Reconsider the April 13, 2012 final judgment. In response, Plaquemine Manor filed an opposition to the Motion to Vacate and/or Reconsider and a reply memorandum in support of its Motion to Dismiss.
The trial court took the matter under advisement and issued its ruling on June 15, 2012. The trial court denied Plaque-mine Manor’s Motion to Dismiss and granted Plaintiffs’ Motion to Vacate and/or Reconsider, effectively reversing its 17February 23, 2012 ruling on the exception raising the objection of prematurity and vacating the April 13, 2012 final judgment.
The June 15, 2012 ruling includes the trial court’s reasons. The trial court concluded that after the medical review panel opined that Plaquemine Manor did not breach the applicable standard of care, Plaintiffs’ suit became simply based in tort and not governed by the MMA. The trial court also suggested that had Plaquemine Manor urged the trial court to grant the exception raising prematurity and dismiss the suit before the medical review panel issued its opinion, Plaintiffs’ suit would have been dismissed without prejudice, and plaintiffs’ remedy would be to file a new suit. The trial court also found that to deny Plaintiffs access to our courts would equate to serious injustice, but offered no further explanation for this conclusion.
Lastly, the trial court adopted. Plaintiffs’ arguments and incorporated them in its ruling. In their Motion to Vacate and/or Reconsider, Plaintiffs argued that when the medical review panel convened and issued its opinion, the exception raising prescription became moot, as the issue of prematurity had been deprived of practical significance.
■ LAW AND ANALYSIS
Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of prematurity. The exception raising the objection of prematurity may be utilized in cases where the applicable law or contract has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. Hidalgo v. Wilson Certified Express, Inc., 94-1322, pp. 3-4 (La. App. 1 Cir. 5/14/96), 676 So.2d 114, 116. In the dilatory exception raising the objection of prematurity, the exceptor bears the initial burden of showing that an administrative remedy or procedure applies, by reason of which the lawsuit is premature. See Williams v. Notami Hospitals of Louisiana, Inc., 04-2289, p. 6 (La.App. 1 Cir. 11/4/05), 927 So.2d 368, 372; Ginn v. Woman’s Hospital Foundation, Inc., 99-1691, p. 4 (La.App. 1 Cir. 9/22/00), 770 So.2d 428, 431, writ denied 00-3397 (La. 2/2/01), 784 So.2d 647; Lewis v. Crossman, 582 So.2d 991, 994 (La. App. 1st Cir. 1991). Once the existence of an administrative remedy is established, the burden then shifts to the plaintiff to show that the specific administrative remedy or procedure has been exhausted. Williams, 04-2289 at p. 6, 927 So.2d at 372.
The MMA provides such a pre-suit mechanism, in that it provides that all claims against health care providers covered under the MMA shall be reviewed by . a medical review panel. See La. R.S. 40:1299.47 (A)(1)(a); see also Williams, 04-2289 at p. 6, 927 So.2d at 372. Except as otherwise provided by the statute, the MMA further provides that no action against a health care provider may be commenced in any court before the claimant’s proposed complaint has been presented to the medical review panel. La. R.S. 40:1299.47(B)(l)(a)(i). This court has *942 interpreted this provision to mean that the panel has rendered its expert opinion on the merits of the complaint. See Griffin v. Louisiana Patient’s Compensation Fund Oversight Bd., 04-0613, 04-0614, p. 5 (La. App. 1 Cir. 3/24/05), 907 So.2d 90, 92. Thus, if an action against a health care provider covered by the MMA has been commenced in a court, the petition contains malpractice claims, and the medical malpractice complaint has not been first presented to a medical review panel, then the dilatory exception raising the objection of prematurity is the proper procedural vehicle to be invoked by the covered health care provider. Williams, 04-2289 at p. 7, 927 So.2d at 372-73. Accordingly, dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for an opinion by a medical review panel before filing suit against the provider. Rivera v. Bolden’s Transp. Service, Inc., 11-1669, pp. 3-4 La.App. 1 Cir. 6/2/12, 97 So.3d 1096, 1099. See Williams, 04-2289 at pp. 6-7, 927 So.2d at 372-73; see also Armand v. Lady of the Sea General Hospital, 11-1083, p. 5 (La.App. 1 Cir. 12/21/11), 80 So.3d 1222, 1226, writ denied, 12-0230 (La. 3/30/12), 85 So.3d 121.
In the instant matter, the June 15, 2012 ruling indicates that the trial court decided the prematurity issue based on its legal conclusion concerning the effects of the issuance of the medical review panel opinion prior to ruling on the exception; rather than by analyzing whether Plaque-mine Manor met its initial burden of proof. Before we consider whether Plaquemine Manor shifted the burden of proof to Plaintiffs, we first turn to the issue that compelled this Court to grant certiorari, i.e. whether the trial court erred as a matter of law where it concluded that the rendition of the medical review panel opinion prior to the trial court’s February 23, 2012 ruling and signing the April 13, 2012 final judgment rendered the otherwise timely filed exception of prematurity moot or rendered the claims asserted in the Petition simply based in tort and not governed by the MMA.
In the instant matter, it is undisputed that Plaintiffs’ filed their lawsuit prior to the rendition of the medical review panel opinion; thus, the issue of whether the trial court correctly applied the law presents a question of law subject to de novo review. See Rivera, 11-1669 at p. 5, 97 So.3d at 1100; Gordon v. Pointe Coupee Health Service District One, 09-2202, p. 4 (La.App. 1 Cir. 8/11/10), 47 So.3d 565, 568, writ denied, 10-2067 (La. 11/12/10), 49 So.3d 894.
Louisiana Code of CM Procedure article 423 provides in part that an obligation implies a right to enforce it which may or may not accrue immediately upon the creation of the obligation. When an action is brought on an obligation before the right to enforce it has accrued, the action shall be dismissed as premature, but it may be brought again after this right has accrued. Thus a suit is premature if it is brought before the right to enforce the claim has accrued. Houghton v. Our Lady of the Lake Hospital Inc., 03-0135, p. 5 (La.App. 1 Cir. 7/16/03), 859 So.2d 103, 106.
This court has steadfastly held that prematurity is determined by the facts existing at the time suit is filed. See Gordon, 09-2202 at p. 4, 47 So.3d at 569; Houghton, 03-0135 at p. 5, 859 So.2d at 106; Hidalgo, 94-1322 at p. 3, 676 So.2d at 116; see also State ex rel. Merz v. Judge of Third District Court, 31 La.Ann. 120, 122 (La. 1879). This is consistent with the dictates of La. C.C.P. art. 423, as a suit can only be brought if the right to enforce the underlying obligation has accrued. It is *943 also consistent with statutory law governing the effects of sustaining a dilatory exception .of prematurity as provided by La. C.C.P. art. 933(A).
Louisiana Code of Civil Procedure article 933(A) sets the dilatory exception of prematurity apart from other objections that can be raised by a dilatory exception. While La. C.C.P. art. 933(B) allows for the'amendment of the petition to remove the grounds of other objections pleaded in the dilatory exception when a dilatory exception of prematurity is sustained, La. C.C.P. art. 933(A) provides that the premature action, claim, demand, issue or theory shall be dismissed. (Emphasis added.) Thus, it necessarily follows that a fact that comes into existence after the premature suit was filed, which if proven would provide a plaintiff with the right' to enforce an obligation, cannot serve to cure a suit that was filed before that right accrued. The rationale for the rule that prematurity is determined based on the facts existing at the time the premature suit is filed dates back well-over a century. In State ex rel. Merz, the court opined that whether the plaintiff made his demand before his debt was due, must be determined and decided upon the state of facts existing at the time -the suit was brought. The penalty for bringing an action prematurely is dismissal. The exception of prematurity is not defeated by the subsequent maturity of the cause of action. If this were so, it would often enable a |nplaintiff to avoid the effects of his own wrong by postponing a decision until his debt had matured. State ex rel. Merz, 31 La.Ann. 120.
While, in the instant matter, Plaintiffs seek to carve out a jurisprudentially created exception to this long-held rule where a medical review panel issues an opinion pri- or to the trial court ruling on the prematurity of the petition, we find such exception is not supported by jurisprudence or the provisions of the MMA. As to the latter, La. R.S. 40:1299.47(A)(l)(a) provides that all malpractice claims against health care providers covered by the MMA, “other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medial review panel established as hereinafter provided for in this Section”[5] (Emphasis added.) Absent the existence of a lawfully binding arbitration procedure, the only exception to the statutory requirement that the malpractice complaint must be presented to a medical review panel and an opinion rendered before bringing suit is provided in La. R.S. 40:1299.47(B)(l)(c). “By agreement of all parties, the use of the medical review panel may be waived.”
The parties have not cited and this Court’s independent research has not revealed any authority that supports the *944 trial court’s conclusion that an exception alleging prematurity of a medical malpractice action brought against a qualified health care provider is rendered moot or cured by the issuance of the medical review panel opinion prior to the ruling on the exception of prematurity. Such a conclusion is contrary to the provisions in the Louisiana Code of Civil Procedure governing the prematurity of an action filed before the right to enforce the obligation has accrued, the medical review hapanel provisions in the MMA, and also to the well-settled jurisprudence providing that prematurity is determined on the facts in existence when the action was filed. Thus, we find the trial court erred, as a matter of law, where it found the issuance of the medical review panel opinion prior to the trial court ruling on Plaquemine Manor’s exception of prematurity, either cured the objection of prematurity or rendered the exception moot.
We further find no bases • in statutory -law or jurisprudence that supports the trial court’s-legal conclusion that the issuance of the medical review panel opinion rendered any malpractice claims asserted against Plaquemine Manor in the Petition simply based in tort and not governed by the MMA. In a medical review panel proceeding, the medical review panel’s sole duty is to “express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care.” La. R.S. 40:1299.47(G). While the opinion of the panel is admissible as evidence in any action subsequently brought by the claimant in a court of law, the findings of the medical review panel are not conclusive or binding on litigants. See La. R.S. 40:1299.47(H); see also Everett v. Goldman, 359 So.2d 1256, 1264 (La. 1978). A medical review panel does not serve as a judge or jury or in any quasi-judicial capacity, but merely as a body of experts whose opinion is not binding on the parties or the court. Houghton, 03-0135 at p. 6, 859 So.2d at 106. A medical review panel’s opinion as to whether a qualified health care provider has breached the applicable standard of care has no bearing whatsoever on a trial court’s determination of whether an action filed against a health care provider must be dismissed because it contains malpractice claims that have not been presented for | ^review by a medical review panel. Thus, we find the trial court erred, as a.matter of law, where it found that after the medical review panel issued its opinion the malpractice claims asserted in the premature Petition became general negligence claims that fall outside of the MMA.
Having put these controversies to rest, we must now determine whether Plaquemine Manor met its initial burden of proof on its dilatory exception of prematurity. As previously noted, the burden is on the defendant to prove prematurity and initial immunity from suit as a qualified health care provider under the MMA. Armand, 11-1083 at p. 5, 80 So.3d at 1226. The defendant must also show that it is entitled to a medical review panel, because the allegations fall within the scope of the MMA. Hamilton v. Baton Rouge Health Care, 09-0849, p. 3 (La.App. 1 Cir. 12/8/10), 52 So.3d 330, 333.
On the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds for the exception do not appear from the petition. La. C.C.P. art. 930; see also Rivera v. Bolden’s Transportation Service, Inc., 11-1669, p. 4 (La.App. 1 Cir. 6/28/12), 97 So.3d 1096, 1100, Louisiana Revised Statute 40:1299.47(B)(l)(a)(ii) provides that a certificate of enrollment issued by the PCF *945 board shall be admitted in evidence. Thus, a defendant may prove its status as a qualified health care provider by offering into evidence a certificate of enrollment issued by the PCF showing it was an enrollee at the time of the alleged malpractice.
In the instant matter, the Petition does not establish whether Plaquemine Manor was a qualified health care provider under the MMA. Thus, to meet its burden of proof, Plaquemine Manor submitted a copy of its PCF Certificate of Enrollment with its memorandum in support of its exception of prematurity. While the Certificate of Enrollment was not included in the supplemental memorandum, a [14copy of the Plaquemine Manor’s Certificate of Enrollment is in the record.[6] There is no indication that Plaintiffs objected to or moved to strike the Certificate of Enrollment from the record or even disputed Plaquemine Manor’s status as a qualified health care provider. Thus, we find Plaquemine Manor met its initial burden of proving its status as a qualified health care provider as defined by the MMA.
Next, we must determine whether the allegations in the Petition fall within the scope of the MMA. The MMA only applies to “malpractice”; all other tort liability on the part of a qualified health care provider is governed by general tort law. Coleman v. Deno, 01-1517, p. 16 (La. 1/25/02), 813 So.2d 303, 315; Armand, 11-1083 at p. 5, 80 So.3d at 1226. Any ambiguities in the MMA should be strictly construed against coverage because the MMA is in derogation of the rights of tort victims. Williamson v. Hospital Service District No. 1 of Jefferson, 04-0451, p. 5 (La. 12/1/04), 888 So.2d 782, 786. However, the fact that a plaintiff may have made allegations sounding in both medical malpractice and general tort law does not remove the petition from the penumbra of the MMA, if a claim for medical malpractice is stated. See McKnight v. D & W Health Services, Inc., 02-2552, p. 7 (La. App. 1 Cir. 11/7/03), 873 So.2d 18, 23.
“Malpractice” is defined by La. R.S. 40:1299.41(A)(13) as follows:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional service rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient.
“Health care” is defined in La. R.S. 40:1299.4l(A)(9), in pertinent part, as follows:
11fi“Health care” means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider , for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement,
The Louisiana Supreme Court has adopted a six-factor test for determining whether alleged negligent conduct by a qualified health care provider constitutes “malpractice,” as opposed to other fault. The factors to be considered include:
(1) .whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
*946 (3) whether the pertinent act or omission involved assessment of the patient’s condition;
(4) whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital or other health care provider is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
See Coleman, 01-1517 at pp. 17-18, 813 So.2d at 315-16.
The MMA is in derogation of the rights of tort victims and its language must be strictly construed; any ambiguity must be resolved against coverage by the MMA. Williamson, 04-0451 at p. 5, 888 So.2d at 786. Whether a claim sounds in medical malpractice involves a question of law, subject to de novo review. See Hernandez v. Diversified Healthcare-Abbeville, LLC., 09-546, p. 1 (La.App. 3 Cir. 11/4/09), 24 So.3d 284, 285, writ denied, 09-2629 (La. 2/12/10), 27 So.3d 849.
In ruling on the exception of prematurity on February 23, 2012, the trial court did not consider Plaquemine Manor’s supplemental memorandum with attached affidavit and documents. The trial court found the supplemental | ^memorandum “was not necessary” to determine whether the allegations on the face of the Petition sound in medical malpractice. Where no evidence is presented at the trial of a dilatory exception of prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true. But the later principal applies only to properly pleaded material allegations of fact, as opposed to allegations deficient in material detail, con-clusory factual allegations, or allegations of law. Hamilton, 09-0849 at p. 4, 52 So.3d at 333.
The pertinent provisions in the petition
[[Image here]]
Junius Bingham, hereinafter referred to as “decedent”, was a resident of the PLAQUEMINE MANOR NURSING HOME ... from November, 2008 until his injuries on August 7, 2009.
3.
On or about the 7th day of August, 2009, decedent was allowed to smoke a cigarette, unsupervised. As a result, decedent, who was blind and suffered from dementia, was severely burned when his shirt caught fire resulting in injuries, which ultimately led to his death on August 23, 2009.
4.
A cause of the accident and resulting injuries was the substandard care and conduct of defendant PLAQUEMINE MANOR NURSING HOME, INC., through their employees, representatives and agents, which substandard care is particularized in the following non-exclusive respects:
a. Failure to properly supervise decedent’s conduct;
b. Failure to properly assess decedent’s state of mind;
c. Failure to properly assess decedent’s condition;
d. Failure generally to meet the standard of care required in the above described situation.
5.
A cause of the accident and resulting injuries to plaintiff was the substandard care and conduct of defendant JANE DOE, LPN, who was the nurse assigned to decedent on the date of August 7, ■2009, which[sic] substandard care is par *947 ticularized in the following non-exclusive respects:
a. Failure to properly supervise decedent’s conduct;
b. Failure to properly assess decedent’s state of mind;
c. Failure to properly assess decedent’s condition;
d. Failure generally to meet the standard of care required in the above described situatioh.
[[Image here]]
I u'i-
As a result of the aforementioned substandard care of defendant PLAQUE-MINE MANOR NURSING HOME, INC.[,] its agents, representatives and employees, and JANE DOE, LPN, decedent, Junius Bingham, sustained severe personal injuries which injuries caused decedent undue pain and physical suffering, as well as mental suffering, which injuries ultimately led to his death.
The character of a plaintiffs cause of action against a qualified health care provider must be determined from an examination of the petition’s allegations. See McKnight, 02-2552 at p. 4, 873 So.2d at 21. In the lower court proceeding, Plaintiffs took the untenable position that Plaque-mine Manor cannot prevail in a" Coleman analysis because there are no allegations that the decedent was receiving health care while he was smoking. However, Plaintiffs chose to frame their negligence claim in terms of the defendants’ failure to properly assess the decedent’s mental and physical impairments. While Plaintiffs also alleged the defendants failed to “meet the standard of care required in the above described situation;” Plaintiffs clearly entwined the decedent’s injuries with the defendants’ failure to properly assess the level of supervision this visually and mentally impaired nursing home resident required when he engaged in smoking activities. Notably, neither party cited any cases that provided a Coleman analysis involving the unfortunate and tragic circumstances present in this matter. This Court’s independent research did not reveal any cases on point, Nonetheless, we find this Court’s opinion in McKnight provides some guidance.
In McKnight, the mother of a nursing home resident filed suit under the Nursing Home Resident’s Bill of Rights (the NHRBR), after her son had allegedly wandered from the home’s premises and died of heat exhaustion, exposure, and other causes. This Court found that the allegations that the nursing home operator violated the duties imposed on it by the NHRBR where it failed to properly supervise and restrain her son from leaving its premises brought the claims within the requisite context of “health care” rendered to a “patient” during hid is “confinement” at a nursing home. This Court concluded that the allegations, if proven, amounted to a “dereliction of professional skill,” and the fact of the competing duties under the NHRBR, which subjected the nursing home operator to professional standards of care, would likely require expert testimony. McKnight, 02-2552 at p. 6, 873 So.2d at 22. Accordingly, in McKnight, this Court found the allegations supported the nursing home operator’s right to a medical review panel under the MMA. gee McKnight, 02-2552 at p. 6, 873 So.2d at 22, citing Price v. City of Bossier City, 96-2408, p. 2 n.2 (La. 5/20/97), 693 So.2d 1169, 1172-73. n.2.
In the case at bar, even in the absence of an evidentiary hearing, , we find Plaintiffs’ allegations clearly establish the alleged tort was the result of Plaquemine Manor’s failure to properly assess the decedent’s physical and mental incapacities where it determined his smoking status *948 did not require supervision. We also find that expert testimony will be required in this case to determine the appropriate standard of care and whether the standard was breached. See McKnight, 02-2552 at p. 6, 873 So.2d at 22. Thus, we find the trial court’s initial February 23, 2012 ruling and April 13, 2012 final judgment sustaining Plaquemine Manor’s exception of prematurity were correct, as the first, second, third, and sixth Coleman factors clearly weigh in favor of the allegations in the Petition sounding in medical malpractice.
Therefore, for the reasons stated above, we grant the writ, vacate the trial court’s June 15, 2012 ruling, reinstate the April 13, 2012 final judgment, and grant Plaque-mine Manor’s motion to dismiss Plaintiffs’ suit.
WRIT GRANTED; JUNE 15, 2012 RULING VACATED; APRIL 13, 2012 JUDGMENT REINSTATED; AND PLAQUEMINE MANOR’S MOTION TO DISMISS PLAINTIFFS’ SUIT WITHOUT PREJUDICE GRANTED.

. Although the pleading is captioned as a Motion to Vacate and/or Reconsider the April 13, 2012 final judgment, the nature of a pleading is determined by its substance and not its caption. See La. C.C.P. art. 865; Revere v. Reed, 95-1913, p. 2 n.l (La.App. 1 Cir, 5/10/96), 675 So.2d 292, 294 n.l. In the instant matter, Plaintiffs’ pleading is in the nature of a motion for new trial.

. Ms. Edwards’ affidavit states that she is a member of the nursing home care team. One of her responsibilities was to review and assess the medical conditions of each resident who smokes. Ms. Edwards participated in the decedent's last smoking assessment on July 21, 2009. The decedent’s last smoking assessment and the nursing home’s smoking policy and procedures were attached to her affidavit.

. We note that Plaquemine Manor submitted a copy of the medical review panel opinion showing it was rendered in November 2011, and a copy of the certified mail receipt showing the opinion was delivered by certified mail to plaintiffs’ counsel on November 28, 2011, with its writ application. However, these documents are not in the record, and there is no indication that the documents were submitted with the various memoranda the parties filed with the trial court. While the date the opinion was rendered and exact date Plaintiffs received notice has not been established in the record, the fact that the opinion was rendered and notice provided to plaintiffs in November 2011, is not in dispute. Plaintiffs represent in their opposition memorandum to *940 Plaquemine Manor's motion to dismiss that they received notice of the panel’s opinion on November 27, 2011,

. The eight employees added were: Linda Christy, RN and Director of Nursing; T. River, CNA; Paulina Johnson, CNA; Jessica Mitchell, CNA; Chassity Delouch, LPN; La’Nita Domino, LPN; Letha Wilson, LPN; and Stephanie Adams.

. We note that when a party files a premature suit to enforce an obligation that is subject to the Louisiana Binding Arbitration Law, La. R.S. 9:4201 et seq., the trial court has the authority to stay the premature suit under certain circumstances. Louisiana Revised Statute 9:4202 provides:
If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in the proceeding with the arbitration.
The MMA does not indicate whether or not a stay of a premature medical malpractice suit would be permissible where the parties are bound by a lawfully binding arbitration procedure. However, that issue is not raised in this matter.

. We also note that a "nursing home” isspe-cifically included in the MMA’s definition .for "health care provider.” La. R.S. 40:1299.41 . (A)(10).