STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 CA 1213

ASHLEY-ROXANNE N'DAKPRI, LYNN SCHOFIELD, AND
EVANGELA MICHELLE ROBERTSON

VERSUS

LOUISIANA STATE BOARD OF COSMETOLOGY; STEVE
YOUNG; IN HIS OFFICIAL CAPACITY AS EXECUTIVE
DIRECTOR OF THE BOARD, AND FRANCES HAND; WILLIAM
MICHAEL GRAYSON; EDWIN H. NEILL, III; JAMES WILLIAMS;
MELINDA TILLEY; MELLA BROWN; DEIDRE DELPIT; AND
ELIZA JILL HEBERT, IN THEIR OFFICIAL CAPACITIES AS
MEMBERS OF THE BOARD

JUDGMENT RENDERED: __JUN 2 1 2024__

* * * * * * *

Appealed from the Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number C684,468 • Sec. 25

The Honorable Wilson E. Fields, Presiding Judge

* * * * * * *

F. Evans Schmidt
New Orleans, Louisiana
  -and-
 Keith Neely, *pro hac vice*
Andrew H. Ward, *pro hac vice*
Betsy Sanz, *pro hac vice*
Arlington, Virginia
  -and-
Jaimie Cavanaugh, *pro hac vice*
Lee U. McGrath, *pro hac vice*
Minneapolis, Minnesota

COUNSEL FOR APPELLANT
PLAINTIFF—Ashley-Roxanne
N'Dakpri

Sherri M. Morris
Christina Berthelot Peck
Evan P. Fontenot
Dominick J. Abrams
Melissa A. Walker
Baton Rouge, Louisiana
  -and-
Karen Reiners Winfrey

COUNSEL FOR DEFENDANTS
APPELLEES— Louisiana State
Board of Cosmetology, Steve
Young; In His Official
Capacity as Executive Board,
and Frances Hand, William
Michael Grayson, Edwin H.
Neill, III, James Williams,

Baton Rouge, Louisiana
   *-and-*
Liz Murrill
*Attorney General*
Phyllis E. Glazer
*Assistant Attorney General*
Baton Rouge, Louisiana

Melinda Tilley, Mella
Brown, Deidre Delpit and
Eliza Jill Hebert, In Their
Official Capacities as
Members of the Cosmetology
Board

\* \* \* \* \* \* \*

**BEFORE: WELCH, WOLFE, AND STROMBERG, JJ.**

2

**WELCH, J.**

The plaintiff, Ashley-Roxanne N'Dakpri, appeals the dismissal of her action for declaratory judgment, injunctive relief, and nominal damages against the defendant, the Louisiana State Board of Cosmetology (the "Board"). We affirm.

**BACKGROUND**

Louisiana has regulated the practice of cosmetology, which was then known as cosmetic therapy or beauty culture and hairdressing, since 1925. See 1924 La. Acts, No. 135. In 2001, the Louisiana State Legislature amended and re-enacted the Louisiana Cosmetology Act ("the Cosmetology Act"), regulating the practice of cosmetology in Louisiana, and it re-designated the applicable statutes as La. R.S. 37:561-607. See 2001 La. Acts, No. 907, eff. June 26, 2001. In doing so, the legislature found that "the practice of cosmetology by qualified individuals is necessary to protect the public health, safety, and welfare of the citizens of the state of Louisiana[,]" and it declared that the purpose of the Cosmetology Act was "to promote, preserve, and protect the public health, safety, and welfare by and through the effective control and regulation of the practice of cosmetology." La. R.S. 37:562(A) and (B). It is prohibited to "engage in the practice of cosmetology without obtaining a current certificate of registration for the appropriate area of practice under the provisions of [the Cosmetology Act]." La. R.S. 37:581(A).[1]

The Cosmetology Act defines "[c]osmetology" as "the practice of using one's hands ... or using cosmetic preparations, antiseptics, soaps, detergents, tonics, lotions, or creams in any one or any combination of the practices of esthetics, hair dressing, and manicuring for compensation, direct or indirect, including tips." La. R.S. 37:563(6)(a). In addition, it defines "[h]airdressing" as "massaging, cleansing, washing, stimulating, manipulating, exercising, beautifying, or doing similar work

---

[1] Louisiana Revised Statutes 37:581(B) exempts certain persons from the provisions of the Cosmetology Act while in the proper discharge of their professional duties in a facility not licensed by the Board. However, none of those exemptions are applicable to this case.

3

upon the scalp of any person, including arranging, singeing, cutting or shaping, curling or waving, cleansing, shampooing, styling, bleaching, coloring, or similar work upon the hair of another person." La. R.S. 37:563(9).

The Cosmetology Act also created the Board, which is "composed of eight members appointed by the governor." La. R.S. 37:571. "Each member [of the Board must] be a registered cosmetologist who has been actively engaged, for at least five years prior to his appointment, in the practice of cosmetology, or an owner of a [certified] beauty shop or salon …, or as a teacher or instructor of cosmetology in this state." La. R.S. 37:572(B).

The Board is responsible for the control and regulation of the practice of cosmetology. La. R.S.37:575(A). It is also required to "[m]ake necessary rules and regulations to carry out the purposes and enforce the provisions of [the Cosmetology Act]" (La. R.S. 37:575(A)(2)); to "specify … requirements for training in [cosmetology] schools" (La. R.S. 37:575(A)(7); and to "[e]stablish minimum specifications for the … personnel, and procedures for salons and schools" (La. R.S. 37:575(A)(9)). In addition, the Board is authorized to "[i]ssue special permits in accordance with rules and regulations adopted by the [B]oard" (La. R.S. 37:575(B)(2)); to "[p]erform any other duties as are necessary and proper to carry out the purposes [of the Cosmetology Act]" (La. R.S. 37:575(B)(9)); and to "adopt rules and regulations for the issuance of special permits to allow limited and specific powers within the practice of cosmetology" (La. R.S. 37:584(C)).

In 2003 and pursuant to the provisions of La. R.S. 37:575(B)(2) and 584(C), the Board adopted rules for the issuance of several special permits. See LAC 46:XXXI.1101, et seq. Included therein was a special permit for "Alternative Hair Design." See LAC 46:XXXI.1105. "Alternative Hair Design" is defined as "the practice of styling hair by twisting, wrapping weaving, extending, locking or braiding the hair by either the use of hands or mechanical devices or appliances[,]"

and "include[s] the application of antiseptics, powders, oils, clays, lotions or tonics to the alternative hair[,]" but it does "not include the application of dyes, reactive chemicals or other preparations to alter the structure or style of the natural hair." LAC 46:XXXI.101(A).

The curriculum for Alternative Hair Design is set forth in LAC 46:XXXI.1107. It requires 500 hours[2] of instruction, which includes, but is not limited to, instruction on the topics of bacteriology and sanitation; prevention of infection and infection control; use of antiseptics, disinfectants, and detergents; hair types and hair structure; scalp diseases and disorders; shampoos, conditioners, herbal treatments, and rinses for synthetic hair only; and braiding and sculpting. See LAC 46:XXXI.1107(A).

The Cosmetology Act requires all beauty shops and salons to obtain a certificate of registration issued by the Board. La. R.S. 37:591. "Beauty shop" or "salon" is defined as "any premises upon or within which cosmetology is practiced for a fee." La. R.S. 37:563(1). To obtain a certificate of registration as a beauty shop or salon, the owner of such business is required to "[c]ertify that all persons employed at such facility are appropriately licensed by their respective licensing board." La. R.S. 37:591(B)(1). The Board is required to "[i]nspect during [the] hours of operation any licensed, permitted, certified, or registered facility ... for the purpose of determining if any provisions of law governing the practice of cosmetology are being violated." La. R.S. 37:575(A)(10)).

## PROCEDURAL HISTORY

On June 20, 2019, Evangela Michelle Robertson, Lynn Schofield, and Ms. N'Dakpri filed a petition for declaratory judgment, injunctive relief, and nominal damages against the Board, the executive director of the Board, and individual

---

[2] In contrast, cosmetologists are required to complete 1,500 hours of instruction. See LAC 46:XXXI.301(A).

5

members of the Board.[3]  Therein, the plaintiffs sought to challenge the constitutionality of the Board's rules requiring an Alternative Hair Design permit, and alleging that the permit requirement harmed them and Afro Touch, a hair braiding salon, by requiring individuals engaging in the business of hair braiding to obtain a permit; injunctive relief prohibiting the Board from enforcing the Alternative Hair Design permit requirement; and an award of $1.00 in nominal damages for the Board's violations of the Louisiana Constitution ("the constitutional claims").

More specifically with regard to the constitutional claims, the plaintiffs prayed for declaratory judgment that La. R.S. 37:563 (setting forth the definition of certain terms used in the Cosmetology Act), 37:581(A) (prohibiting persons from engaging in the practice of cosmetology without a certificate of registration for the appropriate area of practice), and 37:584 (providing that the Board may adopt special rules and regulations for the issuance of special permits) and that LAC 46:XXXI.1101 (the Board's regulation creating special permits, including Alternative Hair Design), 46:XXXI.1105 (the Board's regulation providing that individuals with special permits for Alternative Hair Design may only provide such services in facilities licensed by the Board as cosmetology salons and providing for reciprocity for such permits from another state), and 46:XXXI.1107 (the Board's regulation setting forth the curriculum for the Alternative Hair Design Permit), were unconstitutional as applied because they violated their right to practice the occupation of their choosing, free from unreasonable government interference in violation of Article I, Section 2 (the due process clause); Article I, Section 3 (the equal protection clause); and Article I, Section 24 (the unenumerated rights clause) of the Louisiana Constitution.

---

[3] The petition specifically named as defendants Steve Young, in his official capacity as the executive director of the Board; and Frances Hand, William Michael Grayson, Edwin H. Neill, III, James Williams, Melinda Tilley, Mella Brown, Deidre Delpit, and Eliza J. Hebert, in their official capacities as members of the Board.

The plaintiffs' also prayed for declaratory judgment that La. R.S. 37:575 (establishing the powers and duties of the Board with regard to the practice of cosmetology, including the ability to issue special permits), 37:584, and 37:586 (providing for the examination of applicants for special permits) and LAC 46:XXXI.1101, 1105, and 1107 were unconstitutional on their face because they allowed the Board, an administrative executive agency, to exercise the powers of the legislature in violation of Article II, Section 1 (dividing the powers of government into three separate branches); Article II, Section 2 (establishing separation of the powers of government); and Article III, Section 1 (establishing the legislative power of the state) of the Louisiana Constitution.

In response to the plaintiffs' petition, the Board and the executive director and individual members of the Board filed a peremptory exception raising the objection of no cause of action, and alternatively, the objection of no right of action. Pursuant to a judgment signed by the trial court on December 9, 2019, the trial court overruled the objections of no cause of action and no right of action as to the Board; sustained the objection of no cause of action as to the executive director and individual members of the Board and dismissed the plaintiffs' claims against those defendants; and ordered the Board to file an answer to the plaintiffs' petition within 15 days. The Board subsequently filed its answer, generally denying the allegations of the petition and asserting several affirmative defenses.

Thereafter, in January 2022, one of the plaintiffs, Ms. Robertson, filed a motion seeking to voluntarily dismiss her claims without prejudice, which the trial court granted pursuant to an order signed on January 6, 2022. The plaintiffs then filed an amended petition[4] in October 2022, to add a cause of action for declaratory

---

[4] We note that in the amended petition, Ms. Robertson, who previously dismissed her claims, was included as a plaintiff. In addition, the Board and its executive director and individual members were again named as defendants in the amended petition.

The trial court, in response to another peremptory exception raising the objection of no cause of action and/or no right of action filed by the Board, signed a judgment on April 20, 2023,

7

judgment that La. R.S. 37:563, 581(A), and 584 and LAC 46:XXXI.1101, 1105, and 1107, as applied, were in violation of "La. R.S. … 49:963" (as enacted by 2022 La. Acts, No. 583 and subsequently designated as La. R.S. 49:964(C) and 49:968), relative to agency rules concerning occupational licenses and regulations ("the statutory claim").

In response to the amended petition and with regard to the statutory claim, the Board filed a peremptory exception raising the objection of lack of subject matter jurisdiction, or alternatively, a dilatory exception raising the objection of prematurity. The Board's objections were based on the requirement that, under La. R.S. 49:968(D), an action for declaratory judgment challenging an agency rule or regulation relative to an occupational license may only be brought after the agency has addressed the validity or applicable rule, and that the plaintiffs had failed to bring their challenge before the Board. After a hearing on the matter, the trial court signed a judgment on April 20, 2023, overruling the objection of lack of subject matter jurisdiction, but sustaining the objection of prematurity. The trial court gave the plaintiffs 90 days to file a petition with the Board pursuant to La. R.S. 49:968(D); however, after the plaintiffs "represented" that they would not petition the Board within the next 90 days, the trial court dismissed, without prejudice, the plaintiffs' statutory claim.[5]

---

dismissing Ms. Robertson as a plaintiff in accordance with its previous judgment of January 6, 2022, which dismissed Ms. Robertson's claims; dismissing the executive director and individual members as defendants in accordance with its previous judgment of December 9, 2019, which dismissed those defendants; and dismissing the claims of "unnamed businesses and unnamed hair braiders." These portions of the April 20, 2023 judgment constitute a partial final judgment, as provided in La. C.C.P. art. 1915(A), and were not appealed.

[5] We recognize that the portion of the April 20, 2023 judgment dismissing the plaintiffs' statutory claim pursuant to the objection of prematurity constitutes a partial judgment, as provided in La. C.C.P. art. 1915(B), but it was not designated as a final judgment for purposes of an immediate appeal. Thus, that portion of the judgment is subject to review on an appeal from a final judgment in this case. See **State by and through Caldwell v. Teva Pharmaceuticals Industries, Ltd.,** 2017-0448 (La. App. 1st Cir. 2/8/18), 242 So.3d 597, 602.

A trial on the merits was then scheduled for July 12, 2023 on the plaintiffs' constitutional claim. On the morning of trial, pursuant to La. C.C.P. art. 1672(A)(1),[6] the trial court dismissed the claims of Ms. Schofield, the founder of Afro Touch salon, due to her failure to appear at trial and her failure to notify the trial court of her absence prior to trial. The matter then proceeded to trial with Ms. N'Dakpri as the sole remaining plaintiff. At the conclusion of Ms. N'Dakpri's case, the trial court granted the Board's motion for involuntary dismissal pursuant to La. C.C.P. art. 1672(B) based on Ms. N'Dakpri's failure to meet her burden of proof.

A judgment in accordance with the trial court's ruling, denying and dismissing her constitutional claims[7] was signed on July 25, 2023. Ms. N'Dakpri now appeals, arguing that the trial court erred in dismissing both her "as-applied" statutory claim (as provided in the April 20, 2023 judgment[8]) and constitutional claims[9] (as provided in the July 25, 2023 final judgment) against the Board.

## STATUTORY CLAIM-PREMATURITY

Ms. N'Dakpri's statutory claim was dismissed pursuant to a dilatory exception raising the objection of prematurity because she had not exhausted her administrative remedies as required by law. On appeal, Ms. N'Dakpri contends that the trial court erred because the administrative exhaustion requirement should not apply to her claim.

---

[6] Louisiana Code of Civil Procedure article 1672(A)(1) provides that "[a] judgment dismissing an action shall be rendered upon application of any party, when the plaintiff fails to appear on the day set for trial. In such case, the court shall determine whether the judgment of dismissal shall be with or without prejudice."

[7] More specifically, the judgment denied and dismissed Ms. N'Dakpri's request for a declaration that La. R.S. 37:563, 575, 581(A), 584, and 586 and LAC 46:XXXI.1101, 1105, and 1107 were unconstitutional; injunctive relief; and damages.

[8] See footnote 6.

[9] As previously set forth, Ms. N'Dakpri's constitutional claims were for declaratory judgment that La. R.S. 37:563, 37:581(A), and 37:584 and that LAC 46:XXXI.1101, 46:XXXI.1105, and 46:XXXI.1107 were unconstitutional as applied and that La. R.S. 37:575, 37:584, and 37:586 and LAC 46:XXXI.1101, 46:XXXI.1105, and 46:XXXI.1107 were unconstitutional on their face. On appeal, Ms. N'Dakpri only challenges the dismissal of her "as-applied" constitutional claim.

Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of prematurity. The exception raising the objection of prematurity may be utilized in cases where the applicable law has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. **Dutrey v. Plaquemine Manor Nursing Home**, 2012-1295 (La. App. 1st Cir. 6/17/13), 205 So.3d 934, 941. In such a case, the exceptor bears the initial burden of showing that an administrative remedy or procedure applies, by reason of which the lawsuit is premature. See *Id.* Once the existence of an administrative remedy is established, the burden then shifts to the plaintiff to show that the specific administrative remedy or procedure has been exhausted. *Id.*

Generally, a judgment sustaining a dilatory exception of prematurity and dismissing a cause of action on that basis is reviewed under the manifest error standard of review. **Pinegar v. Harris**, 2008-1112 (La. App. 1st Cir. 6/12/09), 20 So.3d 1081, 1088-1089. However, where a purely legal question is presented, the judgment is reviewed *de novo*. **Richard v. Notre Dame Health System**, 2022-0800 (La. App. 4th Cir. 5/31/23), 368 So.3d 671, 675. Where no evidence is introduced at the hearing, the trial court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true. *Id.*

Ms. N'Dakpri's statutory claim against the Board was based on La. R.S. 49:968(F). She claimed that the Board's rule requiring her to obtain an Alternative Hair Design permit in order to braid hair violated La. R.S. 49:968(F) because the rule was not necessary and narrowly tailored to fulfill legitimate fiduciary, public health, safety, or welfare objectives. The Board, in support of its objection of prematurity pointed to La. R.S. 49:968(D), which provides that an action for declaratory judgment under that section challenging the validity or applicability of a rule may only be brought in a district court after the agency, which in this case

would be the Board, has had the opportunity to determine the validity or applicability of the rule.

Louisiana Revised Statutes 49:968 provides, in pertinent part, as follows:

A. (1) The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the parish in which the agency is located.

(2) The agency shall be made a party to the action.

* * *

C. The court shall declare the rule invalid or inapplicable if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with required rulemaking procedures.

D. An action for a declaratory judgment under this Section may be brought *only after the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question* and only upon a showing that review of the validity and applicability of the rule in conjunction with review of a final agency decision in a contested adjudicated case would not provide an adequate remedy and would inflict irreparable injury.

* * *

F. With respect to the challenge of an occupational regulation, the plaintiff shall prevail if the court finds by a preponderance of evidence that the challenged occupational regulation on its face or in its effect burdens entry into a profession, trade, or occupation, and that an agency has failed to prove by a preponderance of evidence that the challenged occupational regulation is demonstrated to be necessary and narrowly tailored to fulfill legitimate fiduciary, public health, safety, or welfare objectives. Upon a finding for the plaintiff, the court shall enjoin further enforcement of the challenged occupational regulation and shall award reasonable attorney fees and costs to the plaintiff ....

(Emphasis added.)

Based on the express provisions of La. R.S. 49:968(D), the Board met its initial burden of showing that an administrative remedy or procedure applied by reason of which Ms. N'Dakpri's statutory claim (based on La. R.S. 49:968(F)) was premature. Consequently, once the existence of an administrative remedy was established by the Board, the burden then shifted to Ms. N'Dakpri to show that the specific administrative remedy or procedure had been exhausted. At the hearing

11

before the trial court, Ms. N'Dakpri did not offer any evidence that she had requested the Board to pass on the validity of the rules at issue, nor did her amended petition include such allegations. In fact, Ms. N'Dakpri does not dispute that she failed to exhaust her administrative remedy, rather she claims that administrative exhaustion should not be required of her because it would be impossible or futile, citing **Daily Advertiser v. Trans-La, a Division of Atmos Energy Corp.**, 612 So.2d 7, 28 (La. 1993).

Generally, a person aggrieved by an action must exhaust all available administrative remedies provided before being entitled to judicial review. See **Polk v. State, Department of Transportation and Development**, 538 So.2d 239, 250 (La. 1989). The function of the exhaustion doctrine is to give the body whose decision is under attack an opportunity to review, supplement, and, if necessary, correct its decision. **Jones v. Crow**, 633 So.2d 247, 249 (La. App. 1st Cir. 1993). However, this doctrine, like most legal doctrines, is subject to exceptions and limitations. *Id.* at 249-250. One such exception is when exhaustion of administrative remedies would be vain and useless or futile. See **Bagert v. Moreau**, 325 So.2d 702, 705 (La. App. 4th Cir.), writs denied, 329 So.2d 465, 466, and 467 (La. 1976) (noting that it is a general rule of law that a party must exhaust administrative remedies before relief can be sought in the courts, unless doing so would be vain and useless).

In **Daily Advertiser**, 612 So.2d at 28, the Louisiana Supreme Court described the exhaustion of administrative remedies doctrine as a "balancing test," requiring courts to weigh the relevant factors pulling for or against the desirability of exhaustion. The supreme court noted that "[p]ulling away from [the] requirement of exhaustion" were factors such as "irreparable injury to a party from pursuing the administrative remedy, clear absence of the agency jurisdiction, clear illegality of the agency's position, a dispositive question of law peculiarly within judicial

12

competence, *the futility of exhaustion*, and [the] expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy." *Id.* (Emphasis in original). The supreme court further noted that "[p]ulling toward exhaustion" were factors such as the

> need for factual development, importance of reflecting the agency's expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency the opportunity to correct its own errors.

*Id.*

Although Ms. N'Dakpri argues that the factors excusing exhaustion are in her favor, as well as the factors requiring exhaustion, Ms. N'Dakpri offered no support for this contention at the hearing on the objection. The trial court apparently concluded that exhaustion of administrative remedies was necessary because it granted Ms. N'Dakrpi 90 days to petition the Board, and it was only after Ms. N'Dakpri represented that she would not do so that the trial court rendered judgment dismissing her statutory claims without prejudice. Based on our review of the record, we find no error in the trial court's conclusion or judgment.

Notably, in **Daily Adverstiser**, 612 So.2d at 29, the plaintiff therein, pointing toward the list of factors pulling away from exhaustion, relied heavily on the futility of exhaustion pointing to the list of things that the agency could not do, including awarding monetary and injunctive relief. However, the supreme court found a flaw in the argument, noting that it ignored the differentiation recognized in the jurisprudence between a money judgment—a judicial function—and interpreting the reasonableness of an agency's action or rule—an administrative function. *Id.* at 30. The supreme court then noted that "when the interpretation of [an agency's] orders or regulations is at issue, Louisiana courts have invoked the exhaustion rule, requiring that until the plaintiff has exhausted his available remedies before the

13

[agency], he cannot resort to the courts." *Id.* In this case, Ms. N'Dakpri is seeking a determination of the reasonableness of the Board's rule requiring her to obtain an Alternative Hair Design permit in order to engage in the practice of hair braiding and the reasonableness of the Board's requirements to obtain that permit, which is an administrative function within the purview of the Board's expertise. Accordingly, like the trial court, we must conclude that pursuant to La. R.S. 49:968(D), Ms. N'Dakpri was required to exhaust her administrative remedies prior to filing suit on her statutory claims. Because Ms. N'Dakpri failed to establish—either with evidence introduced at the hearing on the objection of prematurity or with factual allegations in her petition—that she had done so, we find that her statutory claims against the Board are premature. Accordingly, we affirm that portion of the April 20, 2023 judgment, which dismissed, without prejudice, Ms. N'Dakpri's statutory claim.

## CONSTITUTIONAL CLAIMS

Ms. N'Dakpri's constitutional claims were dismissed pursuant to La. C.C.P. art. 1672(B) because the trial court found Ms. N'Dakpri failed to meet her burden of proof. On appeal, Ms. N'Dakpri contends that the trial court erred because she met her burden of proving that the Board's enforcement of the Alternative Hair Design permit requirement was not appropriately tailored to a legitimate state interest.

Louisiana Code of Civil Procedure article 1672(B) provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Thus, La. C.C.P. art. 1672(B) provides the basis for an involuntary dismissal at the close of a plaintiff's case in a bench trial, when a plaintiff has shown no right

14

to relief based on the facts and law. **Succession of Arseneaux**, 2022-0638 (La. App. 1st Cir. 12/29/22), 360 So.3d 868, 872, <u>writ denied</u>, 2023-00135 (La. 4/4/23), 358 So.3d 873. In determining whether involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish a claim by a preponderance of the evidence, which means taking the evidence as a whole, the fact or cause sought to be proved is more probable than not. *Id.* When considering a motion for involuntary dismissal, a plaintiff is entitled to no special inferences in his favor; however, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. *Id.*

The trial court's grant of an involuntary dismissal is subject to the manifest error standard of review.[10] *Id.* at 873. Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find that there is no factual basis for the trial court's finding or that the finding is clearly wrong. *Id.*; <u>see also</u> **Stobart v. State through Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993). The issue to be resolved is not whether the trial court was right or

---

[10] On appeal, Ms. N'Dakpri contends that the *de novo* standard of review is applicable because the trial court legally erred by failing to apply a constitutional standard to her claim. We find no merit to this contention. In granting the Board's motion for involuntary dismissal, the trial court noted, in its oral reasons, that Ms. N'Dakpri was "challenging the constitutionality of [the] statutes," and "challenging the authority of the Board to act on licensing the hair braiders," but found that Ms. N'Dakpri did not meet her burden of proof. While the trial court, in its oral reasons for judgment, may not have elucidated the specific constitutional standard (or applicable level of scrutiny) that it was applying, it is clear that the trial court concluded that Ms. N'Dakpri failed to meet her burden of proving that the Board's Alternative Hair Design permit requirement and the enforcement of that permit requirement against her were unconstitutional.

It is well-settled that appeals are taken from judgments, not reasons for judgment. **Bergeron v. Williams**, 1999-0886 (La. App. 1st Cir. 5/12/00), 764 So.2d 1084, 1089 n.7, <u>writ denied</u>, 2000-1697 (La. 9/15/00), 768 So.2d 1281. Therefore, regardless of the underlying reasons (oral or written), if a judgment is correct, *i.e.,* the trial court's conclusion is reasonably supported by the record, it should be affirmed. As such, the issue before this Court is whether the record reasonably supports the conclusion that Ms. N'Dakpri failed to meet her burden of proving the unconstitutionality of the Board's Alternative Hair Design permit requirement and the enforcement of that permit requirement against her. Because we find, for reasons detailed herein, that the record reasonably supports the trial court's conclusion in this regard, the trial court's judgment should be affirmed.

wrong, but whether its conclusion was a reasonable one. See *Id.* Even though an appellate court may feel its own evaluations and inferences are more reasonable than the trial court's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.* Moreover, where two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly wrong. *Id.* at 883.

As previously set forth, Ms. N'Dakpri sought a declaratory judgment that La. R.S. 37:563, 37:581(A), and 37:584 and that LAC 46:XXXI.1101, 46:XXXI.1105, and 46:XXXI.1107 were unconstitutional as applied because the Board's rules and regulations and enforcement thereof violated her right to practice the occupation of her choosing, free from unreasonable government interference, in violation of the due process, equal protection and unenumerated rights clauses of the Louisiana Constitution. See La. Const. Art. I, §§ 2, 3, and 24.[11]

In general, statutes are presumed to be constitutional; therefore, the party challenging the validity of a statute has the burden of proving its unconstitutionality. **LaPointe v. Vermilion Parish School Board**, 2015-0432 (La. 6/30/15), 173 So.3d 1152, 1157; see also **Lakeside Imports, Inc. v. State**, 94-0191 (La. 7/5/94), 639 So.2d 253, 255; **Gilbert v. Catahoula Parish Police Jury**, 407 So.2d 1228, 1231 (La. 1981). While statutes are afforded the presumption of constitutionality, the

---

[11] Article I of the Louisiana Constitution provides, in pertinent part:

Section 2. No person shall be deprived of life, liberty, or property, except by due process of law.

Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

* * *

Section 24. The enumeration in this constitution of certain rights shall not deny or disparage other rights retained by the individual citizens of the state.

16

government does not have unlimited authority to regulate the lives of its citizens and may only pass laws that are reasonably related to the protection or promotion of a public good, such as health, safety or welfare. **Gilbert**, 407 So.2d at 1231.

The due process clause and the equal protection clause establish limits on the government's ability to regulate a person's livelihood or legal occupation. See **Banjavich v. Louisiana Licensing Board for Marine Divers**, 237 La. 467, 485, 111 So.2d 505, 511 (La. 1959) (noting "[t]hat the pursuit of a legal occupation is a property right" and "that the right to engage in a lawful calling is of such a basic nature that the curtailment of the right by oppressive or arbitrary legislation effectuates a deprivation of the complainant's property without due process and denies him equal protection of the law"). However, these constitutional protections "do not operate as limitations upon the police power of the State to enact and enforce laws and regulations to protect the public health and safety and promote the general welfare of the people." **Board of Barber Examiners of Louisiana v. Parker**, 190 La. 214, 274-275, 182 So. 485, 504 (La. 1938) (on rehearing).

In **Banjavich**, 111 So.2d 515 n.7, the Louisiana Supreme Court recognized the appropriateness of regulating barbers and the practice of cosmetic therapy (cosmetology) when it observed that with regard to those professions—and others that have been subject to regulation by the government—that "[i]t is fair to presume that these professions and occupations have substantial relation with the public in general and that their regulation is in the public interest is a proper exercise of police power."

In **Board of Barber Examiners of Louisiana**, there were several challenges to the constitutionality of certain statutes and regulations pertaining to the establishment of the Board of Barber Examiners and the minimum price regulations established for barbers and barber shops by the Board of Barber Examiners, which were rooted in the cost of maintaining standards of hygiene and sanitation. The

Louisiana Supreme Court found that "[t]he operation of a barber shop is a business affecting the public health, safety and welfare and laws and regulations enacted for the purpose of preserving them constitute a valid exercise of the police power of the State provided such laws and regulations are not arbitrary, capricious and oppressive and that the means selected by the legislative body to carry them out shall have a real and substantial relation to the purpose sought to be obtained." **Board of Barber Examiners of Louisiana**, 182 So. at 505. In determining whether there was a real and substantial relation between the regulation challenged and the standards required, the court observed that

> [t]he barbers and the members of the Board of Barber Examiners are familiar with and know the requirements of the sanitation laws and regulations. They are in a position to fairly, reasonably and accurately determine what should be the minimum prices charged ... in order to maintain those standards of hygiene and sanitation in the interest of the public health and safety.

**Board of Barber Examiners of Louisiana**, 182 So. at 510.

As previously noted, the Louisiana legislature has found that "the practice of cosmetology by qualified individuals is necessary to protect the public health, safety, and welfare of the citizens of the state of Louisiana" and that the purpose of the Cosmetology Act is to "promote, preserve, and protect the public health, safety, and welfare by and through the effective control and regulation of the practice of cosmetology." La. R.S. 37:562. Further, the Louisiana Supreme Court observed that the regulation of the practice of cosmetic therapy (now cosmetology) is in the public interest and a proper exercise of police power. See **Banjavich**, 111 So.2d at 505 n.7. Consequently, laws and regulations enacted by the Board for the purpose of preserving the public health, safety, and welfare constitute a valid exercise of the police power of the State (and are thus constitutional) provided that the means selected to preserve the public health, safety, and welfare have a real and substantial relationship to the purpose sought to be obtained. See **Board of Barber Examiners**

18

of **Louisiana**, 182 So. at 505; <u>see also</u> **Gilbert**, 407 So.2d at 1231 (providing that the test to be applied in determining whether an ordinance or statute is a reasonable exercise of government's police power is "whether there is a real and substantial relationship between the regulation imposed and the prevention of injury to the public or the promotion of the general welfare"); **Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control**, 216 La. 148, 177-179, 43 So.2d 248, 258 (1949) (applying the "real and substantial relation" test).[12]

Thus, at trial Ms. N'Dakpri had the burden of proving that there was no real and substantial relationship between the statutes enacted and regulations imposed by the Board, *i.e.* the means selected to preserve the public health, safety, and welfare, and the purpose sought to be obtained, *i.e.* the prevention of injury to the public or the promotion of the general welfare. <u>See</u> **Board of Barber Examiners of Louisiana**, 182 So. at 505; <u>see also</u> **Gilbert**, 407 So.2d at 1231. In this regard, Ms. N'Dakpri offered the testimony of Tisha Butler, an employee of the Board; Mella Brown, a Board member; and herself.

According to Ms. Butler's testimony, she is the Assistant Director of the Board. In this capacity, she assists the Executive Director of the Board with personnel issues, and she is responsible for preparing hearing letters and cease and desist orders. Ms. Butler testified that she has worked for the Board in various capacities since 2002, and that the Board enacted the Alternative Hair Design permit

---

[12] On appeal, Ms. N'Dakpri argues, and we agree, that the "real and substantial relationship" test is the constitutional standard (or level of scrutiny) applicable to her claim. However, she also argues, in the alternative, that the less stringent constitutional standard or level of scrutiny—that the statutes or regulations challenged have a "rational relationship to a legitimate state interest" of public safety, health and welfare—could also be applicable. <u>See</u> **Lakeside Imports, Inc.**, 639 So.3d at 256. Notably, the "real and substantial relationship" test imposes an easier burden of proof on Ms. N'Dakpri than the heavy burden that would be imposed by "rational relationship to a legitimate state interest" standard.

While we with Ms. N'Dakpri as to the applicable constitutional standard, we conclude that Ms. N'Dakpri failed to meet her burden of proof. Thus, even if the "rational relationship to a legitimate state interest" was the applicable burden, the result herein would be the same, as Ms. N'Dakpri likewise failed to meet the heavier burden of proof under that standard.

because natural braiding can pose a threat to public health, safety, and welfare if clients are injured by improper practices, including but not limited to the transfer of bacteria, illnesses, and/or viruses. Ms. Butler explained that originally, the Alternative Hair Design permit required 1,000 hours of training, but in 2010, the training requirement was reduced to 500 hours.

Ms. Butler testified that the Board reviews and approves the curriculum proposed by cosmetology schools in Louisiana that offer the Alternative Hair Design curriculum. She explained that, although the Board mandates that certain topics be covered in the curriculum, the Board does not specifically dictate the amount of time spent on each topic. However, when the Board reviews the proposed curriculum at a Board meeting, it may request modifications to the proposed curriculum. Ms. Butler also explained that the Board's rules require the Board to issue reciprocity permits to any applicant that has a permit from another state and two years of experience. Ms. Butler testified that the Board has received complaints from individuals harmed by hair braiding.

Ms. Brown testified that she has been a member of the Board since 2016. She has been a licensed cosmetologist since 1988, the sole proprietor of a licensed hair salon since 1995, and is a licensed cosmetology instructor. Ms. Brown confirmed that the Alternative Hair Design permit was enacted by the Board in the interest of public health, safety, and welfare. More specifically, Ms. Brown testified that, with respect to public health, safety and welfare, the Alternative Hair Design permit "is to make sure that the person doing the alternative hair design has an understanding of what it is that is required in keeping the public safe," such as "disease, scalp disorders, anything that could be transmitted from one person to another." Ms. Brown testified that she has personally seen clients whose hair had been damaged by hair braiding.

Ms. Brown testified that the Board only approves a cosmetology school's curriculum if the curriculum meets the specific requirements. Ms. Brown also confirmed Ms. Butler's testimony that prior to the enactment of the alternative hair design permit in 2003, those practicing alternative hair design were required to obtain a full cosmetology license, which requires substantially more hours of training and education.

Ms. N'Dakpri testified that she grew up both in the United States and in Africa. Although she started learning about hair braiding when she was seven or eight years old, she studied hair braiding at a cosmetology school in the Ivory Coast (a country in West Africa). Ms. N'Dakpri explained that her cosmetology course was approximately nine months, consisting of an approximate 9:00 a.m. to 5:00 p.m. schedule, and totaling 30 to 40 hours per week. She testified that she completed approximately 1,000 to 1,200 hours of study to obtain her foreign license. Using this education and training, Ms. N'Dakpri testified that she now braids hair at the salon Afro Touch, which was founded by her aunt, Ms. Schofield.

Ms. N'Dakpri testified that as part of the curriculum she completed, she studied sanitation and disinfecting procedures to prevent the transfer of bacteria. Additionally, her course textbook included materials on sanitation and cross-contamination. Ms. N'Dakpri acknowledged that the human scalp is at risk of infection due to the potential transfer of bacteria during braiding. In addition to the nine-month course that she completed in the Ivory Coast, Ms. N'Dakpri testified that she has also received additional education through hair shows, festivals, and learning from other people in the industry. Ms. N'Dakpri admitted that the education she received with respect to sanitation has helped her protect her clients' health when performing services on them and when they are in Afro Touch.

Ms. N'Dakpri testified that prior to braiding her clients' hair, she evaluates their scalps and performs a shampoo service. According to Ms. N'Dakpri, she

21

spends approximately 6 to 12 hours braiding on an individual client depending on the hair style, but more complex braiding sometimes requires up to 18 hours of braiding on a client for a single transaction. Ms. N'Dakpri explained that that she uses combs, clips, gels, oil shine, scissors, hot water kettles with boiling water, and sanitation supplies, such as barbicide solutions, disinfectants, and alcohol at Afro Touch. She testified that Afro Touch has an "emergency kit" of sanitation supplies, that she is responsible for "making sure that everything is clean at all times," and that she trains Afro Touch employees in sanitation and in interacting with customers

Ms. N'Dakpri testified that she could not afford to leave her business to spend 500 hours at a course to obtain the Alternative Hair Design permit, and therefore, she does not have the required permit. However, she admitted that the 500-hour requirement may not apply to her because she trained in another jurisdiction and was eligible for and had applied for reciprocity in Louisiana.

With regard to reciprocity, Ms. N'Dakpri explained that after a Board inspector informed her of the availability of reciprocity, she went online to obtain the packet and submitted the application to the Board. However, it was returned to her with a "list of things that [she] needed to do" to correct her deficient application (including a request for a translation of the transcript from French), which she chose not to complete due to this suit. Ms. N'Dakpri admitted that she has not received a letter denying her reciprocity application, and that she is still interested in obtaining an Alternative Hair Design permit by completing the reciprocity application.

Ms. N'Dakpri also admitted that as of trial, she was not the owner of Afro Touch; rather, it was owned by her brother, Serge Kolai. However, she explained that she would like to expand Afro Touch by hiring additional hair braiders and that she knows other hair braiders she would like to hire, but they do not have the requisite permit.

Based on our review of this evidence, we find no manifest error in the conclusion that Ms. N'Dakpri failed to meet her burden of proving that there was no real and substantial relationship between the statutes enacted and the regulations imposed by the Board and the prevention of injury to the public or the promotion of the general welfare. Together, the testimony of Ms. Butler and Ms. Brown establish a real and substantial relationship between the regulation of hair braiding by the Board, which ensures that individuals performing hair braiding are educated on sanitation and how to properly perform hair braiding, and protecting the health, safety, and welfare of the public. In addition, Ms. N'Dakpri's own testimony is consistent with the testimony of Ms. Butler and Ms. Brown regarding the necessity and importance of training and education on sanitation and hair braiding to protect the public health, safety, and welfare, as she testified that she completed approximately 1,000-1,200 hours of cosmetology education, which included those specific topics, and that she utilizes that knowledge and education when dealing with her clients and managing Afro Touch. Further, her testimony regarding the extent of her education illustrates why the Board's 500-hour requirement is not excessive.

While Ms. N'Dakpri testified that the 500-hour requirement is excessive and that she cannot afford to spend time away from her business to obtain the permit, she offered no evidence as to the specific amount of training that should be deemed necessary. Further, the record establishes that the Board's 500-hour requirement may not be applicable to her because she trained in another jurisdiction and was eligible for reciprocity, but she chose not to complete that process due to this suit.

For these reasons, we find the record reasonably supports the conclusion that Ms. N'Dakpri failed to meet her burden of proving the unconstitutionality of the Board's Alternative Hair Design permit requirement and the enforcement of that permit requirement against her, and that finding is not clearly wrong. Accordingly,

the trial court's July 25, 2023 judgment dismissing Ms. N'Dakpri's constitutional claims is affirmed.

## CONCLUSION

For all of the above and foregoing reasons, the April 20, 2023 judgment of the trial court, which dismissed, without prejudice, Ms. N'Dakpri's claims based on La. R.S. 49:968, is affirmed. In addition, the July 25, 2023 judgment of the trial court, which dismissed, with prejudice, Ms. N'Dakpri's petition seeking: declaratory judgment that the Board's rules and regulations relative to Alternative Hair Design permits (La. R.S. 37:563, 575, 581(A), 584 and 586 and LAC 46:XXXI.1101, 1105, and 1107) were unconstitutional; injunctive relief; and damages, is also affirmed.

All costs of this appeal are assessed to the plaintiff/appellant, Ashley-Roxanne N'Dakpri.

**AFFIRMED.**